MORETON *v.* LOUIS G. PALMER & CO.

1. COVENANTS — BUILDING RESTRICTIONS — RESIDENCE PURPOSES — VIOLATION OF RESTRICTIONS.

Where the deeds to lots in a subdivision restricted their use to one single dwelling house and necessary outbuildings on each lot, violation thereof was not excused because of the use of a dwelling house for a public library and the erection of a store building to be used in connection with a greenhouse on exempted lots.[1]

2. SAME—EQUITY—SHOWING INSUFFICIENT TO REQUIRE LIFTING OF RESTRICTIONS.

That for a number of years no new residences have been built on a certain street in a district restricted to residence purposes, that frontage on said street would be much more valuable if restrictions were removed, and that street car traffic on said street has increased in the last few years, *held*, insufficient to require a court of equity to lift the restrictions.[2]

Appeal from Wayne; Root (Jesse H.), J., presiding. Submitted January 15, 1925. (Docket No. 105.) Decided April 3, 1925.

Bill by Helen E. Moreton against Louis G. Palmer & Company to restrain the violation of building restrictions. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Maurice Miller*, for plaintiff.

*Ralph B. Wilkinson*, for defendant.

FELLOWS, J. This record doubtless presents defendant's contention as favorably as it could be presented but we are not satisfied its contention should

[1]Deeds, 18 C. J. § 558; [2]Id., 18 C. J. § 465.
On right to enforcement of restrictive covenant as affected by change in neighborhood, see note in 28 L. R. A. (N. S.) 706.

be sustained.    Plaintiff files this bill to restrain the
erection of a store building in violation of building
restrictions; she owns and has a home, as we under-
stand the record, fronting on Connecticut avenue on
the north 25 feet of lots 5 and 6 of Stevens' subdivision
of part of quarter sections 17 and 24 of 10,000-acre
tract in the city of Highland Park.    Defendant owns
lot 3 of the same subdivision on the corner of Con-
necticut and Woodward and proposes to erect a store
on it fronting on Woodward avenue and about 150 feet
from plaintiff's residence.    The restrictions in the
deeds in this subdivision cover about a page and a
half of the record and need not be quoted in full.
They provide that:

"Nothing but one single dwelling house, of two or
more stories and the necessary outbuildings shall be
erected on each lot."

Then follows much of detail as to the kind of a dwell-
ing house which may be erected, its distance from the
street line, its value, etc.    Certain lots to which we
shall presently refer are exempted.    The restrictions
recite that they are to hold until January 1, 1947.    De-
fendant in its answer admits the restrictions and that
it intends to violate them.    It insists upon its right
so to do by reason of such changed conditions as would
make the granting of the relief inequitable.    There
is also some claim of violations of the restrictions
but these so far as we are able to discover consist
in the use of a dwelling house for a public library
and the erection of a store building fronting on Wood-
ward to be used in connection with a greenhouse on
the exempted lots above noted and which are referred
to in the restrictions in the following language:

"That lots 10 to 13 and 73 to 78 in said subdivision
are now occupied for greenhouse purposes and they
may continue to be so occupied and for that purpose
the buildings now thereon may be repaired or added
to."

The store building referred to is used in connection with the greenhouse and its erection doubtless did not infringe the restrictions.

Woodward avenue is the principal business street of Highland Park.    No new residences have been built along it either in the Stevens subdivision or elsewhere for a number of years.    But it is not made to appear that there is not enough unrestricted property fronting upon it to meet all demands of business, or that the demands of business create such greater equities in the owners of Woodward avenue frontage over the equities of those who have established their homes in reliance upon restricted covenants in their deeds as to require a court of equity to lift the restrictions. The street car traffic on Woodward, including the interurban cars, has increased in the last few years, but this is not sufficient.    *Harvey* v. *Rubin,* 219 Mich. 307. It is doubtful if there are many streets in Highland Park or Detroit upon which either the street car or vehicular traffic, or both, have not increased by leaps and bounds in the last 10, 15 or 20 years.

Several real estate dealers were called as witnesses by defendant; some of them had Woodward avenue frontage in this subdivision which they desired to, but were unable, to sell due to the restrictions.    They place a very high valuation on this frontage if the restrictions could be removed and give testimony to the effect that the erection of dwellings on it would not be a profitable venture, that the residences would not rent for enough to bring a return on the investment.    In the final analysis this proves, and only proves, that the lots would sell for more if the restrictions were removed.    This would be advantageous to the owners of Woodward avenue frontage who have purchased with full knowledge of the restrictions, and disadvantageous to the home owners on the balance of the subdivision who likewise purchased with full

knowledge of the restrictions and in reliance thereon. There has not been such a radical change in the environments and character of the neighborhood as that we can say that the equities of the owners of Woodward avenue frontage outweigh the equities of the owners of the balance of the subdivision.

This case is like that of *Moore* v. *Curry,* 176 Mich. 456. Woodward avenue frontage in Highland Park was there involved. The same claim was there made as is here made and the same kind of proof was there offered as we find in this record; this is demonstrated by a short quotation from the opinion in that case. Having reference to the claim and the testimony, it was there said:

"In the final analysis counsel for defendants raise for consideration and discuss but the one proposition that the environments and character of the locality, and especially that portion fronting on Woodward avenue, have so changed since the platting of this property that equity ought not to enforce this restriction. In support of this a rapid and phenomenal growth of the city of Detroit and its suburbs is shown, especially extending out Woodward avenue and into Highland Park in and around this subdivision. Testimony was introduced showing that Woodward avenue frontage in that locality is not desired or in demand for residence purposes; that it has become a business street and property on it only in demand for business purposes; that unrestricted land fronting on it sells much higher than that restricted; that 16 stores have been erected on said avenue within a block of Curry-stone; that most of them were erected since 1906; and that various kinds of merchandising, such as are usually conducted in the business part of a municipality, are conducted in said stores."

But it was there held:

"The only equitable consideration for refusing this relief, under present conditions, is that the lots on Woodward avenue would sell for more with the restrictions removed. This is not sufficient.

"No such radical change has been shown in the environments and character of the neighborhood in which the restricted district is situated as to invoke the limitation contended for and justify the court in refusing at this time the relief asked."

This case has been consistently followed by this court.    In *Sherrard* v. *Fine*, 222 Mich. 392, the *locus in quo* was entirely surrounded by and given over to business, and the same claim was made as is here urged.    We sustained the restrictions.    In *McQuade* v. *Wilcox*, 215 Mich. 302 (16 A. L. R. 997), business had likewise crept into the neighborhood and had obtained a substantial hold, the removing of the restrictions would very materially enhance the value of defendant's property, but we declined to lift them. To the same effect is *Benzing* v. *Harmon*, 219 Mich. 532, and *Andre* v. *Donovan*, 198 Mich. 256.    And in *Swan* v. *Mitshkun*, 207 Mich. 70, it was said by Mr. Justice STEERE, speaking for the court:

"But aside from and beyond that issue, those owning property in a restricted residential district or neighborhood, and especially those who have their homes there, and been led to buy or build in such locality by reason of restrictive covenants running with the land imposed upon the street, block or subdivision in which they have purchased, are entitled to protection against prohibited invasion regardless of how close business may crowd around them on unrestricted property, provided the original plan for a residential district has not been departed from in the restricted district, street or block, and the restrictive requirements have been generally enforced, or accepted and complied with by purchasers.    *    *    *    The case falls well within that class where it is the policy of the courts of this State to protect property owners who have not themselves violated restrictions in the enjoyment of their homes and holdings, free from inroads by those who attempt to invade restricted residential districts and exploit them under some specious claim that others have violated the restrictions, or business necessities nullified them."

The case of *Windemere-Grand Improvement & Protective Ass'n* v. *American State Bank*, 205 Mich. 539, is not at all in point. In that case the plaintiff association conceded that there had been such a change in conditions as to render the enforcement of the restrictions inequitable, and the association had been active in lifting restrictions on other properties; the objection being the nearness of the building line to the street line of Windemere avenue. The holding in that case in no way disturbed the holding in *Moore* v. *Curry, supra,* and the other cases cited.

The decree will be reversed and one here entered in conformity with the prayer of the bill. Plaintiff will recover costs of both courts.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.