Rhinehart *v.* Leitch.

## LIONIAL D. RHINEHART *vs.* FRANK E. LEITCH.

Third Judicial District, New Haven, January Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

In a real-estate development, consisting of about one hundred and seventy lots, all of which were subject to the restriction that "no part of the foundation of any building shall be within twenty-five feet of the street line on which said lot fronts," the defendant purchased a corner plot of two lots, each running twenty-five feet along Bedford Street and one running one hundred and thirty feet along Third Street. He thereafter planned the construction of a dwelling-house facing Bedford Street with one foundation wall parallel to and twenty-five feet from the line of that street and with another parallel to and sixteen feet from the line of Third Street and a sun porch extending within six feet of it. The plaintiff, who owned the four lots adjoining those of the defendant on Bedford Street, brought the present suit for an injunction restraining the erection of the house, claiming that the proposed foundation wall on the Third Street side was a violation of the restriction. *Held:* .

1. That, as applied to a building, the word "front" commonly refers to that side of it in which the main entrance is located and, as applied to a vacant corner lot, to that side which has the shorter street line, because of the general usage of facing houses in that direction; but that it is not a term of art and its meaning, in each case, depends upon the context in which it is used and the surrounding circumstances.

2. That since the language of the restriction in the present case referred to ("the street line," instead of the street line *or lines,* upon which the lot fronts, and since other restrictions in the same deed relating to the value of houses to be built upon the tract fixed a different standard for those "fronting" upon Bedford Street than for those "fronting" upon Third Street, the term should be construed to refer only to the Bedford Street line.

3. That this construction accorded with the practical necessities of the case, since a corner plot consisting of less than three twenty-five foot lots would be substantially valueless for building purposes, whereas the original deed provided that a residence could be constructed upon any plot consisting of two or more lots.

4. That the plaintiff was not entitled to injunctive relief.

Argued January 18th—decided February 28th, 1928.

ACTION for an injunction restraining the defendant from violating certain restrictions contained in a deed of real estate, brought to the Superior Court in Fairfield County and tried to the court, *John Richards Booth, J.;* judgment for the defendant, and appeal by the plaintiff. *No error.*

*Raymond E. Hackett,* for the appellant (plaintiff).

*Norris E. Pierson,* for the appellee (defendant).

MALTBIE, J. Plaintiff and defendant own adjoining lands in a portion of the city of Stamford known as "Pinehurst," a real-estate development which in all included about one hundred and seventy lots. Both acquired title from the Pinehurst Realty Corporation. That corporation had acquired the whole tract from the Morewood Realty Company under a deed containing certain restrictions. Among these is one which provides: "No part of the foundation of any building constructed on said lots shall be within twenty-five feet of the street line on which said lot fronts." The deed to the defendant was expressly made subject to all the restrictions contained in the deed from the Morewood Company to the Pinehurst Company. It included two lots, one at the corner of Bedford and Third streets, and the other adjoining it on Bedford Street. Each lot ran along Bedford Street about twenty-five feet; the one on the corner ran along Third Street one hundred and thirty feet, and the other had a depth of about one hundred and twenty-seven feet. Plaintiff's deed included four contiguous lots, the tract adjoining defendant's lots, abutting on Third Street and running along it about one hundred

feet in all, with a depth of about one hundred and
twenty-five feet.   In March, 1927, the defendant be-
gan to construct on his lot a house which faced Third
Street and the foundation walls of it were from twenty-
two to twenty-four feet from the street line of that
street.   The plaintiff thereupon instituted this action,
alleging a violation of the restriction which we have
quoted and seeking an injunction against the erection
of the house.   Thereupon the defendant changed his
plans so that his house would face Bedford Street.
Under this plan the foundation wall parallel to that
street would be about twenty-five feet back from the
street line, but that on the Third Street side would be
only sixteen feet from the street line, and a sun porch
would extend within about six feet of it.   With this
situation before it, the trial court refused the injunc-
tion and the plaintiff has appealed.

The issue turns upon the question whether or not
the foundation of the house as now planned will be
within twenty-five feet "of the street line on which
said lot fronts."   The word "front" as applied to a city
lot has little, if any, inherent application, but it takes
on a borrowed significance from the building which is
or may be constructed thereon.   *Connecticut Mutual
Life Ins. Co.* v. *Jacobson,* 75 Minn. 429, 432, 78 N. W.
10; *Adams* v. *Howell,* 108 N. Y. Supp. 945, 947.   As
applied to a building, "front" in general usage refers
to that side of it in which is located the main entrance.
*Howland* v. *Andrus,* 81 N. J. Eq. 175, 180, 86 Atl. 391;
Oxford and Standard Dictionaries, "front."   When
used of a lot with a house upon it, it means that por-
tion of the lot abutting upon the street toward which
the house faces.   So when used of a bare lot, by trans-
position of significance, it is that side toward which in
ordinary circumstances a house when built will most
likely face; in the case of a city lot of the dimensions

of the defendant's plot, about fifty by one hundred and thirty feet, though it be a corner lot, the very general usage of building houses with their main entrance toward the shorter street line results in a common understanding that that is the side intended when the "front" of the lot is referred to. *Haviland* v. *Columbus,* 50 Ohio St. 471, 473, 34 N.E. 679. But the term is very far from one of art, and an examination of the cases which have construed reservations similar to the one before us, makes it very clear that the meaning is almost invariably determined by the context in which the word is used and the surrounding circumstances. These decisions, therefore, are of little value as precedents, and we must turn to the wording of the particular reservation before us, to the context in which it is used, and the surrounding circumstances to determine its meaning. *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 295, 82 Atl. 561.

There is significance in the very phraseology of this reservation. Of necessity the claim of the plaintiff must be, not that the word "fronts" refers solely to the side of the defendant's premises which abuts upon Third Street, but to both that side and the Bedford Street side. Yet had that been the intent of the parties, it would have been naturally expressed, not by saying "of the street line on which said lot fronts," but "of the street line or lines" on which it fronts; or some other more precise phraseology would have been used, perhaps such as we find in *Scull* v. *Eilenberg,* 94 N. J. Eq. 759, 764, 121 Atl. 778.

This restriction was one of eight and two of the others refer to the front of the lots. One of these speaks of the "frontage" of certain lots into which a portion of the tract might later be subdivided and uses the word in such a way as to throw no light on the meaning of the restriction we are considering. In

another of the restrictions there is a provision as to the minimum cost of houses constructed upon the lots, expressed in this way:    The first cost of a residence constructed "on any lots fronting on Bedford Street" shall be not less than $12,000, "on any lots fronting on Fifth Street" shall be not less than $10,000, and "on any lots fronting on any other streets" shall be not less than $8,000.    Here it is evident that reference is made by the word "fronting" not to the lines of streets upon which the lots abut in a general sense, but to one definite side of each lot; otherwise at the corners where Bedford Street and Fifth Street intersect and where those streets intersect others, the lots would be subject to conflicting provisions; and as all lots abutting on Bedford Street are laid out with the shorter side toward that street, the plan of uniformity of development shows that it was this shorter side which was referred to by the word "fronting."    The meaning of the word "fronting" being thus fixed in this restriction, it is to be assumed that the same meaning was intended to attach to the word "fronts" in the restriction here in question.

Practical considerations point to the same conclusion.    Almost all the lots in the whole development are about twenty-five feet across on the narrower side; eleven of these are situated at street corners, five having a width on the narrower side of about twenty-five feet, and four, of about thirty feet.    The effect of construing the restriction as the plaintiff contends would be practically to destroy the availability for building purposes of these corner lots.    It is true that the restrictions provide that two or more adjacent lots shall constitute a plot, and that not more than one residence shall be constructed on any plot; but even if two lots are bought at a corner, the imposition of a twenty-five foot building restriction on both of the

Rhinehart *v.* Leitch.

sides abutting on streets could not but interfere with the use of the plot for the construction of substantial dwellings, requiring as it would that they be built substantially to the line of the property on one side; and the practical necessity which would result on these corners of purchasing three lots to constitute a plot would seem hardly to accord with the plan of development disclosed in the last restriction to which we have referred.

In the instant case it seems to us that anyone purchasing lots at the street corners in the tract, as the defendant has done, might reasonably have understood the restriction in question to apply solely to the narrower width abutting upon a street. In such a situation, it is particularly true that the restriction is to be construed strictly in favor of the lot owner. *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 295, 82 Atl. 561. The reasons, as stated in *Howland* v. *Andrus,* 81 N. J. Eq. 175, 181, 86 Atl. 391, are: "First, because restrictions of the lawful use of property are against common right, and second, because restrictions, in the framing of which a subsequent purchaser has had no voice, ought to be so clear that by the acceptance of the deed that declares them he may reasonably be deemed to have understood and acceded to them."

There is no error.

In this opinion the other judges concurred.