16848

MARTIN v. CANTRELL *ET AL.*
(81 S. E. (2d) 37)

*Frank G. Carpenter, Esq.,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

March 22, 1954.

GRENEKER, Acting Associate Justice.

The plaintiff, appellant here, brought her action in the County Court of Greenville County in March, 1953, seeking a declaratory judgment that certain restrictions upon her property prohibiting its use for other than residential purposes be declared void. The defendants, who were the other property owners in the subdivision, answered denying that the plaintiff was entitled to the relief sought. The matter was

heard before Honorable W. B. McGowan, Judge of the Greenville County Court, without a jury, and after taking the testimony and hearing arguments he filed his decree on the 29th of August, 1953 holding that the plaintiff was not entitled to the relief sought, and this appeal is from the decree of that court.

The testimony shows that the appellant's lots are located just outside the corporate limits of the City of Greenville on the eastern side of the New Easley Bridge Road and are a part of a subdivision known as the Furman Development Company property. This tract was subdivided in 1923 by being cut into lots, laying out and constructing streets, curbs and sidewalks. The property consisted of forty-one lots, and of 'these lots, twenty-nine had substantially similar restrictions prohibiting their use for purposes other than residences. The appellant's property is included in these restricted lots. Twelve of the lots in the subdivision contained no restrictions, and upon one of these lots, located at an entrance to the subdivision, on the New Easley Bridge Road, has been constructed a drive-in known as Al's Ice Cream Bar. This business establishment adjoins appellant's property but had been constructed prior to the time appellant purchased her lots. Most, if not all, of the lots containing *no restrictions* already have residences constructed upon them. The number of vacant lots in the subdivision, if any, other than those of the appellant, does not clearly appear, as the appellant contended that there were six undeveloped lots, while the defendants' testimony was to the effect that there were no undeveloped lots except those of the appellant and several instances in which two lots were put together to make one residence site. Appellant admits that she knew of the restrictions upon her property at the time she purchased it. The record also reveals that the appellant attempted to use her property for business purposes shortly after she acquired it, that a temporary restraining order was served upon her preventing such use, and that the matter ended there. This proceeding is recognized by appellant, as she asks in her

complaint "that the injunction of the court dated November 24, 1947 be dissolved." The subdivision is now composed of a number of moderately priced homes and has been a residential district, with the exception of one lot upon which the ice cream bar is located, ever since the tract was subdivided. A recorded plat of the property is made a part of the transcript. Plaintiff's property is designated on this plat as Lots 1 and 2 of Block G and a portion of Lot 17 of Block H. Lots 1 and 2 are contiguous, the former bordering on the New Easley Bridge Road; across Mauldin Street, opposite Lots 1 and 2, is Lot 17, which also borders on the New Easley Bridge Road.

The deeds conveying the various pieces of property to the appellant contain the following restrictions:

"1. This property shall be used exclusively for residential purposes and no mercantile establishment of any kind shall be erected.

"2. This property shall not be sold, rented, or otherwise disposed of to Negroes or to persons of African descent.

"3. That no building shall be erected nearer than fifteen feet to the front line."

Provisions Two and Three are not involved in this action.

Quoting from the statement:

"The subdivision now is composed of a number of moderate priced but respectable homes and has been a residential district, with the exception of the one lot upon which the ice cream bar is located, since the tract was subdivided."

There are four exceptions set out in the transcript, but the two questions presented by appellant are:

"(1) Has the appellant carried the required burden of proof in showing that there are no parties who may validly enforce the restrictions on her land?"

"(2) Has the appellant shown such a change as would make enforcement of restrictions inequitable?"

The trial court's answer to both of these questions was adverse to appellant's contention, and with that answer we concur.

The plaintiff seeks affirmative relief under the declaratory judgment act, and of course the burden of proof rests upon her in this action, as well as in other actions, to prove the material allegations of her complaint by the greater weight or preponderance of the testimony. Our attention has not been called to any authority where the burden of proof in an action under the declaratory judgment act rests any less heavily upon the shoulders of the plaintiff than in the ordinary civil action. *Prudential Ins. Co. v. Cannon,* 211 S. C. 134, 44 S. E. (2d) 25. It must be kept in mind that it is the plaintiff who is seeking to have the *restrictions removed* and not the defendants. Appellant has cited certain authorities which hold that where a party seeks to *enforce restrictive covenants,* such party must carry the burden of showing the covenants were intended to benefit his particular lot. We do not think, however, that those cases cited are applicable, for here we have the appellant attempting to assert the *invalidity of the restrictions.*

We have considered all of the exceptions, along with the questions presented, but the paramount issue to be decided is whether appellant's property may be used by her for purposes other than residential.

The undisputed testimony shows that this tract of land was subdivided in 1923, thirty-one years ago, and that no business establishments have been erected on any of the restricted lots; in fact, that the only business establishment of any kind within the subdivision is Al's Ice Cream Bar, which was established prior to the time plaintiff acquired her property and on an unrestricted lot. We take this as very strong and almost unanswerable evidence that the general plan of a residential area has been maintained since the date of the subdivision and that the property owners so regarded it. We think that the plan from the beginning contemplated that the restricted area was to be

used only for residential purposes and we further think that the actions of the landowners since that time show conclusively that they purchased or built their homes in this area resting confident in the belief that they were building or purchasing homes which would be protected by the sanctity of the written provisions of the deeds under which they held. We believe that the testimony as well as the acts of the lot owners throughout the years fully justify our opinion. We cannot possibly say, in view of the whole record, that this enterprise, which has been of such long standing, fails to contain the necessary elements of a general scheme to subject the restricted lots to the operation of the uniform restrictions.

Appellant alleges, quoting from her complaint:

"That the defendants in 1947 petitioned and were granted * * * an injunction against the plaintiff * * * from using this property for a used car lot * * *"

This is a very convincing admission by appellant that she has had actual knowledge that the defendants had regarded and continued to regard her property as restricted.

Having reached the conclusion that there was a general plan to use the restricted property only for residential purposes, we now consider if the respondents have the right to enforce these restrictions. We find in *Pitts v. Brown,* 215 S. C. 122, 54 S. E. (2d) 538, 542:

"And although some of the lots may have written restrictions imposed upon them and others may not, yet if the general plan has been maintained from its inception, without material departure therefrom, and if it has been understood and relied upon by those concerned, it is binding and enforceable *inter sese.*"

Again quoting from the above citation, we find:

"Neither the restricting of every lot within the area covered, nor absolute identity of restrictions upon different lots is essential to the existence of a neighborhood scheme."

Quoting from 26 C. J. S., Deeds, § 167, page 548, we find:

"Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable easements are created. The doctrine does not depend on whether the covenant is to be construed as running with the land."

We are not impressed with appellant's contention that there has been such a change as would make enforcement of restrictions inequitable. The testimony is far short of establishing such a contention. There have been no changes within the subdivision since its inception. The establishment of manufacturing plants and the other business establishments mentioned in the record have all been without the subdivision. The record does not disclose that there has been any substantial change in the essential character of the neighborhood so as to make it impossible to accomplish the purposes intended by the restrictions. It is true that the New Easley Bridge Road has been widened and that some business establishments have been set up beyond the subdivision, but the great majority of even this change occurred prior to appellant's purchase of her property. Again quoting from *Pitts v. Brown, supra*:

"No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, but it can be safely asserted the changes must be so radical as practically to destroy the essential objects and purposes of the agreement."

The case of *Brenizer v. Stephens,* 220 N. C. 395, 17 S. E. (2d) 471, 473, cited in argument, is a case very similar to the case at bar. Myers Park, in the City of Charlotte, N. C., is a restricted area, and the plaintiff Brenizer owned lots

therein. She brought an action seeking to have removed certain restrictions upon the use of her property occurring in her own deed and mesne conveyances under which she held. The restrictions sought to be removed required that her property be used only for residential purposes. The grounds on which she sought to have these restrictions removed were that the encroachment of business in the neighborhood and adjacent area was so great that the purposes of the restrictions had been destroyed and their further observance or enforcement would be oppressive and inequitable. The Court, in refusing to uphold the contention of the plaintiff, said:

"The question for decision is whether evidence of business changes and developments along Providence Road, outside of the covenanted area, when none have occurred within the area, is available to plaintiffs in support of their demand that the restrictions in their deed be removed or declared inoperative because of radical changes affecting the property, which have defeated the purpose of the restrictions and rendered their enforcement inequitable."

The plaintiff there, as in the case at bar, based her cause of action on changes of conditions outside of the restricted area. That court held that:

"The unmistakable weight of authority in this country answers this question in the negative,"

citing 26 C. J. S., Deeds, § 171, p. 576 and numerous other authorities. Again quoting from this decision, we find:

"It is generally held that the encroachment of business and changes due thereto, in order to undo the force and vitality of the restrictions, must take place within the covenanted area."

Dealing with the same situation, the Supreme Court of Michigan, in *Moreton v. Louis G. Palmer & Co.*, 230 Mich. 409 at page 413, 203 N. W. 116 at page 117, held as follows:

"* * * those owning property in a restricted residential district or neighborhood, and especially those who have their

homes there, and been led to buy or build in such locality by reason of restrictive covenants running with the land imposed upon the street, block or subdivision in which they have purchased, are entitled to protection against prohibited invasion regardless of how close business may crowd around them on unrestricted property, provided the original plan for a residential district has not been departed from in the restricted district * * *."

Neither are we impressed with the appellant's contention:

"That the plaintiff's lot is useless and valueless for residential purposes, but the plaintiff has a purchaser ready and willing to purchase the lot provided he may use the same for business or commercial purposes."

Quoting again from *Benizer v. Stephens, supra*:

"Neither is it true that because a small part of a restricted district lying along the edge or at the threshold thereof, is forced to bear the brunt of attack from outside commercial expansion, and as a result is impaired in value for the use prescribed by the restrictions—in these circumstances we say, it is not true that the restrictions will be abated as to the part so affected because of the hardship visited upon that particular land as compared with the sheltered portions of the district."

We feel that the record in this case shows beyond dispute that there have been no radical changes in the surrounding area, and no changes in the residential character of the Furman Investment Company property which would make it inequitable or oppressive to enforce the specific restrictions.

It is the judgment of this Court that the well considered order of the Judge of the Greenville County Court be affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.