20235

Gary VICKERY, James K. Carey, Ramond Taylor, Roger L. Sears, Alfred Hooper, and George O. Williams, Individually and as Members of The Rolling Acres Landowners Association, Respondents, v. Henry POWELL, Grady Watkins, James Burris, Grady Tilley, J. D. Tribble, Waymon Lee Martin, Jimmy Martin, Roy Vickery, Kenneth W. Barker and G. H. Bert, of which Henry Powell, Grady Watkins, Grady Tilley, J. D. Tribble, Waymon Lee Martin, and Jimmy Martin are the Appellants.

(225 S. E. (2d) 856)

*M. A. McAlister, Esq.,* of Anderson, *for Appellants,*

*L. Henry Raines, Esq.,* of Anderson, *for Respondents,*

June 9, 1976.

GREGORY, Justice:

The basic issue involved here is whether a uniform set of restrictions imposed in deeds to an identifiable portion

of a subdivision created a common scheme of development initiating mutual restrictive covenants enforceable by any grantee of a restricted deed against any other grantee.

This is a class action brought by the respondents in December 1973 against the appellants, all of whom are owners of property situated in a subdivision known as "Rolling Acres" in Anderson County, South Carolina, wherein the respondents sought injunctive relief contending restrictions against the use of mobile homes as contained in all deeds to land sold between two creeks in Rolling Acres Subdivision is enforceable *inter sese* on the theory of mutual covenants or negative equitable easement.

In January of 1973 a class action was filed by many of the present respondents against many of the present appellants wherein it was contended that the entire subdivision was restricted against the use of mobile homes and injunctive relief was prayed for. That action was dismissed without prejudice.

The matter was referred to a Special Referee who held hearings on the matter and recommended the respondents be granted injunctive relief based on his finding that restrictions contained in the deeds to lots between the creeks created restrictive covenants. The action was dismissed against Mr. Roy Vickery, whose home, although having the appearance and shape of a mobile home, was found by the Referee not to be one within the prohibition of the deed restrictions as it was constructed from the ground up and was not, and had never been, mobile. Timely exceptions were taken by appellants and heard by Judge Glenn who entered his order April 2, 1975 confirming the report of the Special Referee. On April 14, 1975 notice of intention to appeal was served and this appeal followed.

Most of the appellants live in mobile homes, some from the inception of "Rolling Acres", and it is their contention that: (1) No general scheme of improvement has been in-

augurated which could give birth to a negative easement of mutuality of covenant and consideration; (2) That since all deeds to lots in "Rolling Acres" refer only to "Rolling Acres", there is no notice which would delineate that part of "Rolling Acres" in which mobile homes are permissible and that part in which they are prohibited; (3) That if a negative equitable easement does exist, or if there is mutuality of covenant and consideration between the grantees, the respondents should be denied injunctive relief on the ground of laches and estopped from enforcing such.

Although appellants pose four questions for our consideration, it is unnecessary to reach those concerning estoppel and notice as we find the first question dispositive of all issues involved. The basic question is whether the following restrictions imposed on all those deeds to land between the creeks in Rolling Acres Subdivision inaugurated a general scheme of improvement giving rise to mutuality of covenant enforceable *inter sese*.

"For the benefit of the Grantor and Grantee, the following restrictions are hereby imposed on the above described property: (a) no limitations of size of dwellings; (b) all dwellings to be constructed of new materials on the outside and all wooden or frame exposed areas are to be painted; (c) no tin roofs permitted on any dwellings; (d) no outside sanitary buildings; (e) no out-buildings or sheds or barns to be permitted on building lots unless they are completely painted; (f) no junk automobiles or truck bodies permitted on premises; (g) no storage of old lumber or items of an unsightly nature accumulated on any building lot; (h) no trailer home or mobile home will be allowed; (i) no pigs or swine will be allowed on any building lot; (j) no dog kennels or dog breeding will be allowed on any building lot; and (k) farm animals, namely, horses, cows or farm fowl—chickens or turkeys—will be permitted on lots consisting of two (2) acres or more."

There is no dedication to residential or business use in the above restrictions, nor any statement of purpose other

than they are for the benefit of the Grantor and Grantee. There is nothing to designate the use of occupancy. The record reveals that the property is open for commercial purposes and is being utilized as such in at least two instances (a nursery and a repair garage). Not only are there no required minimum building standards or set-back lines, the first restriction explicitly states there shall be no limitations on size. It is apparent from the restrictions themselves that farm animals are allowed within the area sought to be restricted.

Appellant Vickery built his home from the ground up in the shape and appearance of a mobile home. The Referee and lower court were unable to find that his home was a mobile home or trailer within the meaning of the restrictions and we must agree with their conclusion as it is neither against the clear preponderance of evidence nor without evidentiary support in the record. *Ex parte, Guaranty Bank & Trust Co.,* 255 S. C. 106, 177 S. E. (2d) 358 (1970).

We can find no discernible purpose or scheme of improvements embodied in these restrictions. When Mr. Roy Vickery can build a home that looks like a trailer within the "restricted area", we can see no substantial benefit to the covenantees in encumbering the land. This is not to mention the detrimental effect which the inevitable encroachment of business will have on the respondent homeowners.

This is not a case like *Martin v. Cantrell,* 225 S. C. 140, 81 S. E. (2d) 37 (1954), relied on by the Special Referee, where the use of the land for "other than residential" was prohibited in the deeds and where the residential plan had been maintained with one minor exception from the inception of the subdivision. Neither is it comparable to the situation in *Pitts v. Brown,* 215 S. C. 122, 54 S. E. (2d) 538 (1949), also relied on by the lower court, where the court found that twenty-eight (28) years of acquiescence

by all in a common scheme filled in the holes created by deeds with no restrictions, subjecting the unrestricted deeds to the visually apparent, general scheme.

The record shows that mobile homes have been in use in Rolling Acres since its inception. The deeds to lots outside the area between the creeks expressly provides for their use. People buying the lots restricted against mobile homes and trailers brought them in anyway and several with the acquiescence of the developer Mr. Bert.

We find as a matter of law, the restrictions at issue do not embody a general plan of development giving rise to negative equitable easements or covenants enforceable *inter sese*. The word "scheme" is defined in Black's Law Dictionary, (4d) as: "A design or plan formed to accomplish some purpose—a system." We are unable to discern any purpose or system to be accomplished by the foregoing eleven restrictions.

A covenant must express the purpose of the parties thereto to be valid and enforceable and it must not be too indefinite or against public policy. 21 C. J. S. Covenants, § 1(c). The purpose, if there be any, is so indefinite as to be non-existent to this Court. The law favors the free and unrestricted use of property, resolving doubts and ambiguities in favor of free use and against restrictions. *Edwards v. Surratt, et al.,* 228 S. C. 512, 90 S. E. (2d) 906 (1956); 21 C. J. S. Covenants, § 19.

There is little to keep the original grantor from selling any remaining lots free of such restrictions, nothing to prevent the encroachment of business, nothing to prevent the building of homes that resemble mobile homes, and nothing to prevent maintenance of farm animals on lots of two acres or more. We are at a loss to see what lasting relief we can give respondents in the face of all this.

"[E]quity will not enforce a covenant when to do so would be to encumber the use of land, without at the same time achieving any substantial benefit to the covenantee."

*Whitmarsh v. Richmond,* 179 Md. 523, 20 A. (2d) 161 (1964).

Accordingly, we

Reverse.

LEWIS, C. J., and LITTLEJOHN and RHODES, JJ., concur.

NESS, Justice (concurring) :

I concur in the judgment of the majority opinion that the restrictions do not embody any general scheme of development. Under the restrictions, the land can be developed for industrial, commercial or residential use, subject to minor limitations expressing the covenanting parties personal dislikes. The restrictions fail to provide for a scheme of development and accordingly can not be enforced *inter sese* on the theory of a negative easement by implication. *Edwards et al. v. Surratt,* 228 S. C. 512, 90 S. E. (2d) 906 (1956).

I expressly do not join the portion of the majority opinion which intimates that properly drafted covenants restricting land to residential use and excluding mobile homes within the meaning of residential use would be invalid if a person can build a permanent home which resembles a mobile home. I do not believe the majority opinion will be so interpreted, but if it is, I do not share that position.