1968

A. Hugh GIBBS and Mary Settle Gibbs, Respondents v.
Wayne T. KIMBRELL and Peggy J. Kimbrell, Appellants.
(428 S.E. (2d) 725)

Court of Appeals

*H. Lloyd Howard,* Landrum, *for appellants.*

*Joseph K. Maddox, Jr.,* Spartanburg, *for respondents.*

Heard Jan. 18, 1993.

Decided March 15, 1993.

CURETON, Judge:

Wayne T. and Peggy J. Kimbrell appeal from an order requiring them to remove a shed from their property because its location violates their residential subdivision's covenants and restrictions, and enjoining them from future violation of these covenants and restrictions. We affirm as modified.

Diamond Point, a residential subdivision of approximately 45 lots, is subject to covenants and restrictions ("covenants") which were recorded in 1974. In 1976, the respondents, A. Hugh and Mary Settle Gibbs, purchased lots 13, 14, and 15 in the subdivision. These lots are contiguous and form a corner parcel at the intersection of Emerald Drive and Walnut Hill Road. Emerald Drive, the entrance to the subdivision, runs through the center of the subdivision from north to south, and abuts these three lots on their eastern boundary. Walnut Hill Road, which runs from north-east to south-west, abuts lot 13 on its northern boundary. In 1980, the Gibbs built a house on lot 13.

The Kimbrells purchased lots 11 and 12 from the Reids on May 4, 1989. Lots 11 and 12 are contiguous and form a corner parcel at the entrance to the subdivision. Emerald Drive abuts these two lots on their western boundary. Walnut Hill Road abuts lot 12 on its northern boundary. Lots 11 and 12 are directly across Emerald Drive from lots 13 and 14. An unnamed dirt road, which runs north to south, abuts lots 11 and 12 on their eastern boundaries.

The Reids operated a blueberry farm on lots 11 and 12 for over ten years and in 1987, with the permission of the Gibbs, built a shed on lot 12 to protect their blueberries from the sun. They operated the blueberry farm only on the weekends and as a part-time business.

The shed, which did not have a foundation or walls, was readily movable. The approximate dimensions of the shed are 10 feet by 20 feet. The shed is located approximately 30-40 feet east of Emerald Drive, more than 150 feet south of Wal-

nut Hill Road, and within 25 feet of the boundary of lots 11 and 12. Whether the location of the shed violates the covenants is in part the subject of this litigation.

Shortly after the Kimbrells purchased lots 11 and 12, Mr. Kimbrell told Mr. Gibbs that he was contemplating the construction of a garage and operation of an automobile repair business on the lots. At a meeting of subdivision residents, Kimbrell refused to state his intentions. Subsequently, Kimbrell poured a concrete floor under the shed.

In October 1989, the Gibbs brought an action to compel the Kimbrells to remove the shed, alleging that its location violated the 150-foot setback from the front of the lot, and the 25-foot setback from the side of the lot,[1] required by the covenants. They sought to enjoin the Kimbrells from operating a car repair business in violation of these covenants, costs, and a temporary injunction. On June 27, 1990, the action was referred to the master-in-equity for final decision, with direct appeal to the Supreme Court. The order of reference also provided that "no buildings be erected on the [Kimbrells'] property during the pendency of this action."

Subsequent to the Gibbs' filing this action, the Kimbrells added walls, a door, and a window to the shed. The door of the shed faces toward Walnut Hill Road.

The main thrust of the Kimbrells' defenses argued at trial was that the covenants were unenforceable because they had been abandoned by the residents of the subdivision. The master ruled against the Kimbrells on all defenses, finding that the covenants were valid and that Emerald Drive was the "front" of lot 12. He ordered the Kimbrells to remove the shed in accordance with paragraph 2 of the covenants.[2] He also ordered the Kimbrells not to operate an automobile repair shop on their lots in accordance with paragraph 7 of the covenants.[3]

---

[1] Whether the location of the shed offends the 25-foot setback from the side of the lot is not an issue on appeal.

[2] Paragraph 2 provides that "[n]o outbuilding shall be erected nearer than 150 feet from the front of the lot and [it] must be at least 25 feet from the side lot line and 10 feet from the rear lot line." The covenants and the subdivision plat do not define which lot boundary is the front of the lot.

[3] Paragraph 7 provides that "the lots in this subdivision shall not be used for industrial purposes or for business." Paragraph 15 provides that the covenants are enforceable "against any person or persons violating or attempting to violate any covenant or restriction, either to restrain such violation or to recover damages." (Emphasis added.)

On appeal, the Kimbrells assert the master erred in finding Emerald Drive is the front of lot 12. They also assert that because the Gibbs acquiesced or gave express permission for the Reids to build the shed on lot 12 and did not object to the shed's location for more than two years before the property was sold to them, the Gibbs are barred by "laches, waiver, or estoppel" from enforcing the covenants. Finally, they assert that because they have taken no action to construct or otherwise operate an automobile repair shop, the court prematurely issued the injunction, and that, regardless, the injunction should have been limited in its term.[4]

## I.

The Kimbrells assert that because neither the subdivision's covenants nor plat define or designate which lot boundary is the front of their lots, they should have the option of choosing whether Emerald Drive or Walnut Hill Road is the front of their lot.[5] We disagree.

Although the Kimbrells have not built on lots 11 or 12, Mrs. Kimbrell testified at trial that they intend to build a house on lot 12 which will face north toward Walnut Hill Road. The Kimbrells argue that because the front entrance of their shed faces toward Walnut Hill Road, they have chosen Walnut Hill Road as the front of their lot. They also argue that "front of the lot" should be given its ordinary meaning, which is the direction the house "faces," or in the absence of a house, the direction which the Kimbrells have chosen for their house to face.

The Kimbrells assert that the trial judge erred because covenants restricting the free use of land are disfavored and unenforceable unless clear and reasonable in their terms. *Archambault v. Sprouse,* 218 S.C. 500, 507, 63 S.E. (2d) 459, 462 (1951). They assert that any ambiguity regarding which lot boundary is the front of lot 12 should be resolved against the Gibbs. *See Vickery v. Powell,* 267, S.C. 23, 28, 225 S.E. (2d) 856, 858 (1976). They also argue that although no South Car-

---

[4] Paragraph 16 provides that "[t]hese covenants and restrictions shall continue in full force and effect until June 1, 1999."

[5] If Walnut Hill Road is the front of lot 12, then the location of the shed does not offend the 150-foot setback of "outbuildings" from the front of the lot required by paragraph 2 of the covenants.

olina cases are on point, courts in other jurisdictions have held that where covenants require a setback from the front of a corner lot, this setback only applies to the lot boundary toward which the building faces. *Maher v. Park Homes, Inc.*, 258 Iowa 1291, 142 N.W. (2d) 430, 434 (1966); *Rhinehart v. Leitch*, 107 Conn. 400, 140 A. 763, 763 (1928); *see Staley v. Mears*, 13 Ill. App. (2d) 451, 142 N.E. (2d) 835, 837 (1957). Finally, if the developer intends to treat a setback as applicable to the several streets which bound a corner lot, he should express his intent in unambiguous language. *Broeder v. Sucher Brothers*, 331 Mich. 323, 49 N.W. (2d) 314, 316 (1951).

When faced with the question of determining which side of a corner lost is its front, courts have scrutinized the general development scheme of the neighborhood in question. *Rhinehart*, 140 A. at 764; *see Staley*, 142 N.E. (2d) at 837 ("It might be logically argued that the lot faces or fronts on the principal street.")

We consider *Sprouse v. Winston*, 212 S.C. 176, 46 S.E. (2d) 874 (1948), to be instructive. In *Sprouse*, our Supreme Court reviewed a plat and restrictive covenants to determine which lot boundary was the "inside lot line." The trial court had found that because the plat and covenants were ambiguous, there were two inside lot lines. The Supreme Court determined that there was no ambiguity. It stated: "where a common grantor . . . inaugurates a general scheme of improvement [for a tract of land] . . . and each lot . . . is made subject to such scheme of improvement, there is created and annexed to the entire tract . . . a negative equitable easement, in which the several purchasers of lots have an interest. . . ." (citation omitted). *Id.* 212 S.C. at 184, 46 S.E. (2d) at 878. In granting relief to the appellant, it considered the subdivision's "general scheme of improvement" and determined that the purpose of the allegedly ambiguous restriction was to prevent the respondent's garage from blocking the light, view, and air of the appellant's house. *See Hamilton v. CCM, Inc.*, 274 S.C. 152, 160, 263 S.E. (2d) 378, 382 (1980); *Circle Square Co. v. Atlantis Development Co.*, 267 S.C. at 27, 225 S.E. (2d) at 858.

Our review of the plat and the record establishes that the Kimbrells' lots are bounded by Emerald Drive which is within the subdivision and Walnut Hill Road which is outside the subdivision; there are three streets within the subdivision

(Emerald Drive, Pearl Lane, and Walker Road); and the majority of lots within the subdivision border one of the three streets within the subdivision.[6]

Although we agree with the Kimbrells that the Diamond Point covenants, if considered alone do not define the front of lot 12, we resolve this uncertainty by consideration of the general scheme of development of the subdivision and of what we conclude is the purpose of paragraph 2 of the covenants, to prevent construction of "outbuildings" or sheds within 150 feet of roads that are within the subdivision. Accordingly, we sustain the master's holding that Emerald Drive, which is within the subdivision, and not Walnut Hill Road, which is outside the subdivision, is the front boundary of lot 12.[7]

An action to enforce restrictive covenants by injunction is in equity. *Holling v. Margiotta*, 231 S.C. 676, 100 S.E. (2d) 397, 398 (1957). On appeal, in an equitable action tried by a master alone, this court is able to find facts in accordance with its own view of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E. (2d) 773, 775 (1976). The master's conclusions of law and findings of fact are supported by the preponderance of the evidence.

## II.

The Kimbrells next assert that because the Gibbs did not object to the Reids' operation of the blueberry farm, and gave their express permission to build a shed on lot 12 without objecting to the shed's location for more than two years before the property was sold to them, the Gibbs are barred by laches, waiver or estoppel from asserting their rights to enforce the covenants. They also argue that the Gibbs are estopped because they have not objected to multiple violations of the covenants by other subdivision residents. We disagree.

Waiver is the intentional relinquishment of a known right. *Frady v. Smith*, 247 S.C. 353, 360, 147 S.E. (2d) 412, 415 (1966); *Lyles v. BMI, Inc.*, 292 S.C. 153, 158,

---

[6] Mr. Gibbs testified that the scheme of the subdivision and the structures that exist in the subdivision establish that the fronts of all lots face the roads that divide the subdivision.

[7] While the Kimbrells must comply with the master's order to remove the shed from its current location, the covenants do not prevent their construction of a house that faces north toward Walnut Hill Road and the mountains if the house otherwise complies with all setbacks.

355 S.E. (2d) 282, 285 (Ct. App. 1987). Mr. Gibbs' testimony reveals that in 1987 he assented to the construction of a temporary shed that could be easily moved. He initiated this action within six months of the commencement of efforts by the Kimbrells to make the shed permanent. We conclude that although the Gibbs might have intended to waive their right to object to the operation of a blueberry farm or similar activity, they did not intend to waive their right to enforce the covenant to prevent the operation of an automobile repair business, which would have a significantly different character than the Reids' cultivation of blueberries on the weekends. A party's waiver of the right to object to a minor violation of a covenant does not result in waiver of his right not object to a subsequent and more substantial violation. *See Holling,* 231 S.C. at 682, 100 S.E. (2d) at 400. We find no waiver.

Estoppel arises when a party, relying upon what another has said or done, changes his position to his detriment. *Russell v. Drivers Leasing Services, Inc.,* 282 S.C. 358, 361, 318 S.E. (2d) 579, 581 (Ct. App. 1984). Additionally, estoppel arises when a party observes another dealing with his property in a manner inconsistent with his rights and makes no objection while the other changes his position in reliance on the party's silence; the party's silence is acquiescence that estops him from later seeking relief. *McClintic v. Davis,* 228 S.C. 378, 383, 90 S.E. (2d) 364, 366 (1955); *Seabrook Island Property Owners Association v. Pelzer,* 292 S.C. 343, 348, 356 S.E. (2d) 411, 414 (Ct. App. 1987).

Our review of the record reveals no evidence to suggest that the Kimbrells changed their position in reliance upon the words, actions, or acquiescence of the Gibbs. Despite Mr. Gibbs' statement that he intended to enforce the covenants, the Kimbrells poured a concrete floor beneath the shed and after commencement of this suit, added walls, a door, and a window to it.

The Kimbrells also argue that the Gibbs are estopped from enforcing the covenants because the Gibbs have permitted multiple violations by other subdivision residents without protest. Our review of the record establishes that the Gibbs, in filing this suit, objected to the only violations of which they were personally aware. Regardless, the violation of covenants

by other residents of the subdivision without objection by the Gibbs would not affect their right to enforce the covenants against the Kimbrells unless the character of the subdivision has changed so radically as to defeat the purpose of the covenants. *Circle Square Co.*, 267 S.C. at 628, 230 S.E. (2d) at 708.

Laches is the *negligent* failure to act for an unreasonable period of time (emphasis added). *Gray v. South Carolina Public Service Authority*, 284 S.C. 397, 400, 325 S.E. (2d) 547, 549 (1985). A court of equity will refuse to protect a party's rights if the party's unreasonable delay has resulted in injury to his adversary. Delay alone in the assertion of a right, without injury to the adversary, does not constitute laches. *Grossman v. Grossman*, 242 S.C. 298, 309, 130 S.E. (2d) 850, 855 (1963) (a delay of over seven years was reasonable where there was no prejudice to the defendant); *Archambault*, 218 S.C. at 508, 63 S.E. (2d) at 463 (a delay of three months was reasonable where the defendant's hasty conversion of a building from residential to commercial use during the interim was deliberate); *Arceneaux v. Arrington*, 284 S.C. 500, 503, 327 S.E. (2d) 357, 358 (Ct. App. 1985) (a delay of two years was unreasonable where defendant had constructed a metal building without protest). Whether a party is barred by laches is determined by the facts of each case. *Arceneaux*, 284 S.C. at 503, 327 S.E. (2d) at 358. Determination of laches rests within the sound discretion of the trial court. *Grossman*, 242 S.C. at 309, 130 S.E. (2d) at 855.

Although laches might bar the Gibbs from objecting to the continued operation of a blueberry farm, we conclude that they acted with reasonable diligence in initiating their suit within five months of Mr. Kimbrell's pouring the concrete floor beneath the shed, making it permanent at its location, and of his statement that he intended to operate an automobile repair business on lots 11 and 12. Regardless, a party "[who] openly defies known rights, in the absence of anything to mislead him . . . is not in a position to urge as a bar [his adversary's] failure to take the most instant conceivable resort to the courts." *Archambault*, 218 S.C. at 509, 63 S.E. (2d) at 463. Additionally, we note that the Gibbs' delay resulted in part from uncertainty as to whether Mr. Kimbrell would act to violate the covenants.

The master's conclusions of law and findings of fact are supported by the preponderance of the evidence.

### III.

The Kimbrells assert that because they have taken no action to construct or otherwise operate an automobile repair shop, the court erred by prematurely issuing an injunction. They also assert that because the Gibbs' unreasonable delay in asserting their claim has injured them, the Gibbs are barred from asserting their rights to an injunction by laches. Additionally, they argue that regardless of whether the injunction is premature or barred by laches, it should have been limited in its term. We hold the injunction was appropriate and the action timely, although we limit the injunction's term.

The Gibbs have the right to enjoin *threatened* injury to their property rights (emphasis added). *State v. Columbia Water Power Co.*, 82 S.C. 181, 193, 63 S.E. 884, 890 (1909). The remedy of injunction rests in the sound discretion of the trial court. *Hunnicutt v. Rickenbacker*, 268 S.C. 511, 515, 234 S.E. (2d) 887, 889 (1977); *Transcontinental Gas Pipe Line Corp. v. Porter*, 252 S.C. 478, 481, 167 S.E. (2d) 313, 315 (1969). The issuance of an injunction depends upon the equities between the parties and if a great injury would be done to the Kimbrells with little benefit to the Gibbs, the trial court should have refused equitable relief. *Hunnicutt*, 268 S.C. at 516, 234 S.E. (2d) at 889.

Paragraph 7 of the covenants states that lots in this subdivision shall not be used for industrial or business purposes; paragraph 15 provides for enforcement of the covenants against any person "violating or attempting to violate" their terms. Mr. Gibbs testified that shortly after the Kimbrells purchased their property, Mr. Kimbrell stated that he intended to construct a garage on lot 12 and to operate a car repair business. When Mr. Gibbs called a meeting of subdivision residents, Mr. Kimbrell refused to state his intentions. Subsequent to this meeting, Mr. Kimbrell added a floor, door, window, and walls to the shed, suggesting that he intended to disregard the covenants. By Mrs. Kimbrell's admission, the Kimbrells are not injured by the injunction or by the Gibbs' alleged delay in their action. At trial, she testified that she and

her husband did not intend to operate an automobile repair business within the subdivision, but to grow blueberries and to build a house. We conclude that between the parties, equity favored the Gibbs, whose rights under the covenants were threatened by the Kimbrells' obvious intent to disregard them.

At oral argument, the Gibbs' counsel acknowledged that because the covenants would expire by their own term on June 1, 1999, the injunction should be ineffective beyond this date. We modify the injunction to limit its duration to June 1, 1999. *See Holling*, 231, S.C. at 683, 100 S.E. (2d) at 400.

## IV.

The Kimbrells assert they have been oppressed by the order of reference, which enjoined them from erecting *any buildings* on their property during the pendency of this action, a period of over two years (emphasis added). Because an order of reference granting a temporary injunction is immediately appealable, the Kimbrells cannot complain of unnecessary oppression. S.C. Code Ann § 14-3-330 (1976) as amended; *see Appeal of Paslay*, 230 S.C. 55, 64, 94 S.E. (2d) 57, 61 (1956) (interpreting S.C. Code of 1952 § 15-123(4)); *Lamar v. Croft*, 73 S.C. 407, 410, 53 S.E. 540, 541 (1906) (interpreting S.C. Code of 1902 § 11 (Civil Proc. Code)).

Additionally, because this court has affirmed the master's order in regards to the validity of the covenants, it is unnecessary for this court not consider the Kimbrells' objections to the temporary order. *See Hunnicutt*, 268 S.C. at 515, 234 S.E. (2d) at 889.

## V.

The decision of the trial court is affirmed as modified in accordance with this opinion.

Affirmed as modified.

GOOLSBY, J., and LITTLEJOHN, Acting J., concur.