THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The Cliffs at Keowee Community Association, Inc.,
Respondent,
v.
Roger L. ODonald, Lynne ODonald, and Cornerstone National Bank,
Defendants,
of whom Roger L. ODonald and Lynne ODonald are
Appellants.
 
 
 

Appeal From Pickens County
 Charles B. Simmons, Jr., Circuit Court 
 Judge

Unpublished Opinion No.  2004-UP-616
Heard November 17, 2004  Filed December 
 7, 2004

AFFIRMED

 
 
 
James C. Alexander, of Pickens, for Appellants.
R. Murray Hughes, of Pickens, for Respondent.
 
 
 

PER CURIAM:  Roger and Lynne ODonald appeal the trial courts order 
 granting a permanent injunction to The Cliffs at Keowee Community Association, 
 Inc.  The injunction prohibited the ODonalds from constructing a home that 
 did not include a two-car garage as required by the subdivisions restrictive 
 covenants.  We affirm.
FACTS
In 1995, the ODonalds purchased lot 27 at The Cliffs at Keowee, 
 a new residential subdivision located on Lake Keowee in Pickens County.  The 
 conveyance was subject to any and all restrictions attached to the property, 
 including the Declaration of Covenants, Conditions and Restrictions established 
 by the Association.  The Association is the homeowners group for The Cliffs 
 at Keowee, and every lot owner is a member.  
The Covenants required the approval of all proposed structures by 
 the appropriate committee before beginning construction.  Further, the Covenants 
 expressly provided that the approval of any proposed plan would not constitute 
 a waiver of the right to withhold approval of any similar proposals or plans 
 subsequently or additionally submitted for review.  
Article XI of the Covenants, entitled Architectural Standards, provides in 
 paragraph 11.8(c) that all homes are required to have two-car garages:  An 
 attached, semi-detached, free-standing or basement level two-car garage[] shall 
 be required for each dwelling or residence. 

Although the developer originally retained responsibility for enforcement 
 of the Covenants, it transferred this duty to the Associations Architectural 
 Review Board (ARB) in May of 2000.  The Covenants required that the ARB consist 
 of three members to be duly constituted.    
In 2001, the ODonalds sought approval from the ARB for plans to 
 build a home on their lot, but the request was rejected because the plans did 
 not include a two-car garage.  The ODonalds subsequently proceeded with construction 
 without the ARBs approval.    
The Association filed suit against the ODonalds requesting temporary and permanent 
 injunctions to stop construction of the home.  The ODonalds answered and filed 
 counterclaims seeking, among other things, a declaration that the Covenants 
 were not enforceable.  They also filed a third-party complaint against individual 
 ARB members.  
In December of 2001, Judge Henry Floyd granted a temporary injunction prohibiting 
 further construction pending a hearing on the merits.  By consent of the parties, 
 the matter was referred to a special referee, who, after the final hearing, 
 granted a permanent injunction to the Association in May of 2003 and denied 
 the relief requested by the ODonalds.  The ODonalds filed a motion to alter 
 or amend the judgment, which was denied.  The ODonalds appeal.
STANDARD OF REVIEW
An action to enforce restrictive covenants by means of an injunction 
 is in equity.  Taylor v. Lindsey, 332 S.C. 1, 498 S.E.2d 862 (1998).  
 On appeal of an equitable action tried by a judge alone, this Court may find 
 facts in accordance with its own view of the preponderance of the evidence.  
 Townes Assocs. v. City of Greenville, 266 S.C. 81, 221 S.E.2d 773 (1976).  
 This broad scope of review does not, however, require an appellate court to 
 disregard the findings of the trial judge, who saw and heard the witnesses and 
 was in a better position to evaluate the credibility of the witnesses.  Widman 
 v. Widman, 348 S.C. 97, 557 S.E.2d 693 (Ct. App. 2001).
LAW/ANALYSIS
I.  Changed Conditions
The ODonalds first contend the trial court erred in finding the 
 subdivision had not been radically and substantially changed so as to make the 
 Covenants unenforceable.  We disagree.
Under South Carolina law, restrictive covenants can be deemed unenforceable 
 where there has been a change of conditions.  Inabinet v. Booe, 262 S.C. 
 81, 202 S.E.2d 643 (1974).  Although there is no hard and fast rule as to what 
 constitutes a change of conditions, generally the character of a neighborhood 
 must have been radically and substantially altered so as to practically destroy 
 the essential objects and purposes of the restrictive covenants.  Id. 
 at 84, 202 S.E.2d at 645 (citing Pitts v. Brown, 215 S.C. 122, 54 S.E.2d 
 538 (1949)).  The party seeking to avoid enforcement of the restrictions has 
 the burden of proving a change of conditions.  Id.  
To support their argument, the ODonalds point to several violations 
 of the Covenants, such as the fact that three homes were built without two-car 
 garages.  As noted by the trial court, two of the homes were built without garages 
 when the developer retained enforcement power and there are no records as to 
 whether or not these homeowners received approval before building their homes.  
 Once the ARB was aware of violations following its takeover of enforcement, 
 it wrote letters to the homeowners requesting compliance with the Covenants 
 or proof that the developer had approved the plans.  The Association is currently 
 working with these homeowners to resolve the violations.    
The ODonalds also suggest that a two-car, in-line garage in the neighborhood 
 was a radical and substantial change from the Covenants that altered the character 
 of the subdivision.  The homeowners with that garage, however, followed the 
 Associations process for seeking approval and worked closely with the ARB.  
 The ARB eventually approved the two-car, in-line garage because the unique nature 
 of the homeowners property justified a variance.                                                
Other violations alleged by the ODonalds, such as the lack of requisite 
 square footage, the lack of paved walkways, the docking of a houseboat on one 
 of the lots, and the use of plywood siding, also first occurred when the developer 
 had the responsibility of enforcing the Covenants.  As William Mahoney, chairman 
 of the ARB, testified, all of the plans that [the ARB has] approved since . 
 . . July 15, 2000 meet the requirements.  In addition, the ARB sent compliance 
 request letters to the homeowners, and timetables have been set to bring violators 
 into compliance.  Although some violations do exist in the subdivision, we agree 
 with the trial courts ruling that they have not fundamentally changed the residential 
 character of the neighborhood so as to make the Covenants unenforceable.    

II.  Waiver and Estoppel
The ODonalds assert the trial court erred in holding the Association 
 neither waived nor is estopped from asserting its right to enforce the Covenants 
 because it failed to object to past violations.
A waiver is a voluntary and intentional abandonment or relinquishment 
 of a known right.  Janasik v. Fairway Oaks Villas Horizontal Prop. Regime, 
 307 S.C. 339, 344, 415 S.E.2d 384, 387 (1992).  Generally, the party claiming 
 waiver must show that the party against whom waiver is asserted possessed, at 
 the time, actual or constructive knowledge of his rights or of all the material 
 facts upon which they depended.  Id. at 344, 415 S.E.2d at 387-88.  
 Further, a partys waiver of the right to object to a minor violation of a restrictive 
 covenant does not result in waiver of his right to object to a subsequent and 
 more substantial violation.  Gibbs v. Kimbrell, 311 S.C. 261, 268, 428 
 S.E.2d 725, 729 (Ct. App. 1993).
As noted above, when the ARB took over enforcement of the Covenants, 
 the violations complained of by the ODonalds were already in existence.  Once 
 the ARB learned of the violations, it began the process of bringing those homeowners 
 into compliance.  The only variance granted by the ARB was for the two-car, 
 in-line garage, which was properly approved as required by the Covenants.  Moreover, 
 the Covenants themselves provide that the granting of a variance does not prevent 
 the future enforcement of those restrictions on a homeowner.  Thus, we agree 
 with the trial court that the Association did not make a voluntary and intentional 
 waiver of its right to enforce the Covenants.
The ODonalds also argue that the Association is estopped from enforcing 
 the Covenants because it has permitted multiple violations by other homeowners 
 without protest.  
Estoppel arises when a party, relying upon what another has said 
 or done, changes his position to his detriment.  Gibbs, 311 S.C. at 
 268, 428 S.E.2d at 729.  Additionally, estoppel arises when a party observes 
 another dealing with his property in a manner inconsistent with his rights and 
 makes no objection while the other changes his position in reliance on the partys 
 silence; the partys silence is acquiescence that estops him from later seeking 
 relief.  Id.
Our review of the record reveals no evidence to suggest that the 
 ODonalds changed their position in reliance upon the words, actions, or acquiescence 
 of the Association.  Despite the ARBs insistence that it intended to enforce 
 the Covenants, the ODonalds began construction of their home and continued 
 until the circuit court issued a temporary injunction against them.  The ODonalds 
 knew they did not have ARB approval, but violated the Covenants and began construction 
 anyway.  Accordingly, we hold the Association is not estopped from enforcing 
 the Covenants.  
III.  Composition of the ARB
The ODonalds claim the trial court erred in finding the ARB had 
 sufficient authority to enforce the Covenants.  We disagree.
The ODonalds assert the Covenants require the ARB to consist of at least three 
 members.  Although their meeting minutes refer only to two members, we conclude 
 there is evidence to support the trial courts finding that the ARB as then 
 constituted had sufficient authority to enforce the restrictions when the ODonalds 
 sought approval of their construction plans.  
William Mahoney, Richard Kraince, and William Carruthers, Jr. all testified 
 that they were members of the ARB, with Mr. Mahoney being the chairman.  The 
 minutes expressly reflect that at least two of the above, Mr. Mahoney and Mr. 
 Carruthers, served on the ARB.  The minutes also show that any member wishing 
 to serve on the ARB could simply contact Mr. Mahoney.  Mr. Kraince testified 
 he was also on the committee as a volunteer member.  Mr. Mahoney confirmed that 
 Mr. Kraince was a member of the committee, although his name was not specifically 
 listed in the minutes in that capacity.  Mr. Mahoney stated that the same minutes, 
 which failed to list Mr. Kraince, also failed to reflect that the ODonalds 
 had attended the board meeting, so the minutes were incomplete.  
In any case, we note the ODonalds could have immediately challenged the composition 
 of the ARB and thus its power to enforce the Covenants.  Instead, they elected 
 to build without first obtaining approval from the ARB; consequently, we find 
 no error in this regard.  
IV.  Damages
The ODonalds lastly claim the trial court erred in failing to award 
 actual and punitive damages.  
An argument is deemed abandoned on appeal if it is argued in a short, 
 conclusory statement without supporting authority.  Fields v. Melrose Ltd. 
 Partnership, 312 S.C. 102, 439 S.E.2d 283 (Ct. App. 1993).  We decline to 
 address this issue because the ODonalds failed to analyze the facts or state 
 appropriate authority to support their argument on appeal.
AFFIRMED.
HEARN, C.J., and GOOLSBY and WILLIAMS, JJ., concur.