### 2280

Anita W. KNEALE, Elizabeth W. Dillard, Charles R. Nairn, Martha E. Nairn, William A. Kinney, M. Violette Kinney, J. Ronald Sanders, Jacqueline Watson, Vic Meade, M. Katherine Meade, E.L. Gibson, and Roy Duffey, of whom Anita W. Kneale, Charles R. Nairn, Martha E. Nairn, William A. Kinney, M. Violette Kinney, J. Ronald Sanders, Jacqueline Watson, Vic Meade, M. Katherine Meade, E.L. Gibson, and Roy Duffey are Appellants/Respondents v. Henry Earl BONDS and Janet Bonds, Respondents/Appellants.

(452 S.E. (2d) 840)

Court of Appeals

*J. Cordell Maddox, Jr.,* of *Glenn, Haigler & Maddox;* and *Oren O. Jones,* of *Jones, Spitz, Moorhead, Baird & Hermeston,* Anderson, *for appellants-respondents.*

*J. Calhoun Pruitt, Jr.,* of *Pruitt & Pruitt,* Anderson, *for respondents-appellants.*

Submitted Nov. 1, 1994.

Decided Dec. 12, 1994; Reh. Den. Feb. 9, 1995.

CURETON, Judge:

This suit in equity was instituted by several property owners (property owners) within the Anchor Point Horizontal Property Regime against Henry Earl Bonds and Janet Bonds, also owners of a condo unit within Anchor Point, seeking a mandatory injunction restraining the Bonds from proceeding with the erection of a 2,200-square-foot addition to their condominium unit being built over a portion of the general common elements of Anchor Point. Alleging that the property owners had also encroached upon the general common and limited common elements, the Bonds claimed the property owners were estopped from seeking the relief they requested, and by way of counterclaim sought the removal of improvements erected by them.[1] The trial court held the Bonds commenced their construction in good faith and with the approval of the Board of Directors which had apparent authority to approve such improvements. The court further held the defense

---

[1] Both the property owners and the Bonds sought damages for trespass, but prior to the commencement of the case both abandoned their respective actions for trespass. The property owners also named members of the Anchor Point Board of Directors who approved the encroachments or additions, seeking damages for breach of duty and negligence. The board members, however, settled with the property owners before trial.

of laches was applicable to the Bonds' counterclaim, and denied both parties' requests for injunction. Both parties appeal. We affirm in part, reverse in part and remand.

An action to enforce restrictive covenants by injunction is in equity. *Holling v. Margiotta,* 231 S.C. 676, 100 S.E. (2d) 397 (1957); *Gibbs v. Kimbrell,* — S.C. —, 428 S.E. (2d) 725 (Ct. App. 1993). On appeal of an equitable action tried by a master, this court has authority to find facts in accordance with our own view of the preponderance of the evidence. *Id.*

The Bonds purchased Unit 28 at Anchor Point on May 31, 1991. On June 5, 1991, the Bonds applied for permission to build an addition to their condominium which would extend onto the common elements of Anchor Point. Their application was approved by the Anchor Point Board of Directors. The Bonds thereafter commenced construction October 29, 1991. The property owners sought to prevent construction, obtaining first a temporary restraining order on November 6, 1991, and subsequently a temporary injunction on November 14, 1991. The property owners then sought a mandatory injunction for the removal of the improvements built by the Bonds. The Bonds likewise sought an injunction against several of the property owners for the removal of previously constructed alterations and additions.

The provisions of the Master Deed establishing Anchor Point (formerly The Shoals 1 Horizontal Property Regime) require authorization from the Board of Directors and a majority of the unit co-owners for any alterations or additions to the common elements.[2] Despite this provision, the practice of An-

---

[2] Provision XV of the Master Deed provides:

There shall be no alterations or additions to the General Common Elements or Limited Common Elements of this property, except as authorized by the Board of Directors and approved by not less than a majority of the unit co-owners of this property, provided the aforesaid alterations or additions do not prejudice the right of any unit co-owner, unless his consent has been obtained. The costs of the foregoing shall be assessed a common expenses. Where any alteration or additions as aforedescribed—i.e., as to the General Common Elements or Limited Common Elements of this property are exclusively or substantially exclusively for the benefit of the Unit co-owner(s) requesting same, then the cost of such alterations or additions shall be assessed against and collected solely from the Unit co-owner(s) exclusively or substantially exclusively benefiting, and the assessment shall be levied in such pro-

chor Point since its founding in 1973 was to require only approval by the Board for alterations and additions. The Board of four directors is elected annually by a majority vote of the co-owners.

The various additions and alterations previously approved, a number of which were for the benefit of certain of the property owners,[3] are not as extensive as the Bonds' additions, which include approximately 1,300 square feet of covered space and approximately 800 square feet for a concrete pad for parking. The Bonds would apparently also require greater use of additional common areas for access to their parking area.

The trial court, nonetheless, found that all of the alterations or improvements made by the Bonds were with express or implied permission of the Board. The court also found that the Board has great discretion under Article XV in approving alterations and additions, and that no one has ever sought majority approval of the co-owners. The court concluded the Board received, under Article XV, apparent authority to approve such alterations and additions.

The court proceeded to balance the equities, in considering whether to grant a mandatory injunction for the removal of the Bonds' additions, and determined under *Janasik v. Fairway Oaks Villas Horizontal Property Regime*, 307 S.C. 339, 415 S.E. (2d) 384 (1992), that principles of equitable estoppel should apply. The court determined laches should apply with respect to the Bonds' counterclaim for removal of the additions previously constructed by the property owners. Finally, the court refused both parties' requests for a mandatory injunction and dissolved the previously issued temporary injunction.

---

portion as may be determined as fair and equitable by the Board of Directors of the Association. Where such alterations or additions exclusively or substantially exclusively benefit Unit co-owners requesting same, said alterations or additions shall only be made when authorized by the Board of Directors and approved by not less than a majority of the unit co-owners exclusively or substantially exclusively benefiting therefrom.

[3] The testimony was uncontradicted that these alteration consisted primarily of shrubbery and small gardens around each condominium unit, enlarged decks utilizing limited common elements, and other superficial, nonstructural modifications to individual units.

On appeal, the property owners argue the court erred in denying their request for a mandatory injunction because it is the appropriate relief under the Master Deed and the S.C. Horizontal Property Act, and the balance of equities favor them. They further maintain the court should have strictly construed the Master Deed pursuant to the requirements of the Horizontal Property Act which provides that the Master Deed shall be strictly enforced. We agree with the property owners that the additions and alterations in question were approved contrary to the specific provisions of the Master Deed requiring approval of a majority of the homeowners.

Anchor Point is a horizontal property regime subject to the Horizontal Property Act. *See* S.C. Code Ann. § 27-31-10 et seq. (1991). Horizontal property regimes are administered by By-Laws inserted in or appended to the Master Deed. *See* S.C. Code Ann. § 27-31-150 (1991); *Ortega v. Kingfisher Homeowners Association, Inc.,* — S.C. —, 442 S.E. (2d) 202 (Ct. App. 1994). Both the By-Laws for Anchor Point and the Horizontal Property Act provide that the Master Deed should be strictly enforced.[4] A strict construction of the Master Deed and the provisions of the Horizontal Property Act prevent additions of the type built by the Bonds because the Bonds' structure violates provisions of the Master Deed and the Horizontal Property Act.

---

[4] Provision XXIX of the Master Deed entitled *The By-Laws—The Operating Entity and Remedies in Event of Default,* provides:

> Failure to comply with any of the terms of the Master Deed or other restrictions and regulations contained in the charter of By-Laws of Association . . . shall be grounds for relief which may include . . . damages, injunctive relief, foreclosure of lien of any combination thereof, and which relief may be sought by Association or, if appropriate, by an aggrieved co-owner of a Unit.

> S.C. Code Ann. § 27-31-170 (1991) provides: Each co-owner *shall comply strictly* with the bylaws and with the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the master deed or lease or in the deed or lease to his apartment. Failure to comply with any of the same shall be grounds for a civil action to recover sums due for damages or injunctive relief, or both, maintainable by the administrator or the board of administration, or other form of administration specified in the bylaws, on behalf of the council of co-owners, or in a proper case, by an aggrieved co-owner. (Emphasis added.)

Cited in *Ortega v. Kingfisher Homeowners Association, Inc., supra.*

The right to enforce a restrictive covenant is not limited to mere preventive action, but will, in the proper case, extend to requiring a defendant, by mandatory injunction, to repair any injury already done, or to remove a structure already erected. *Hunnicut v. Rickenbacker*, 268 S.C. 511, 515, 234 S.E. (2d) 887, 889 (1977). The issuance of an injunction depends upon the equities between the parties and if great injury will be done to the Bonds with little benefit to the other property owners, it is proper for the trial court to deny equitable relief.

In the present case, the Bonds' addition was stopped in its initial phase and would require a minimal expense to remove given its current incomplete condition. On the other hand, the other property owners testified that the common area at issue was once a large, flat grassy area used for the recreational use and enjoyment of all unit co-owners at Anchor Point, but the Bonds' addition changed the character of the property and blocked their view of the lake. Therefore, the property owners argue that a mandatory injunction is their only effective remedy. *See Sea Pines Plantation Co. v. Wells*, 294 S.C. 266, 270, 363 S.E. (2d) 891, 894 (1987).

In balancing the equities, however, the trial court, relying on *Janasik*,[5] concluded that the property owners are estopped from requiring the removal of the Bonds' addition because they never objected to the Board's practice of approving alterations and additions without a majority vote of the unit co-owners.

Although alterations in violation of the Master Deed have been made at Anchor Point, the vast majority of those alterations were to the limited common areas, and were of a nonstructural nature. We conclude that although the property owners may have acquiesced or even assented to those minor alterations, they did not intend to waive their right to enforce the covenants contained in the Master Deed and By-Laws relating to alterations or variations of the general or limited common areas. The Bonds' proposed enclosed structure is sig-

---

[5] In *Janasik v. Fairway Oaks Villas Horizontal Property Regime*, 307 S.C. 339, 415 S.E. (2d) 384 (1992), the court ruled that a homeowners association had waived its rights and was equitably estopped from seeking removal of certain violations of a master deed as a results of their inaction over a period of years when other violations of the master deed and by-laws occurred.

nificantly different in size and nature from the mainly aesthetic additions previously authorized. A party's waiver of the right to object to a minor violation of a covenant does not result in waiver of his right to object to a subsequent and more substantial violation. *Gibbs*, 428 S.E. (2d) at 729.

Moreover, "estoppel arises when a party observes another dealing with his property in a manner inconsistent with his rights and makes no objection while the other changes his position in reliance on the party's silence; the party's silence is acquiescence that estops him from later seeking relief." *Gibbs*, 428 S.E. (2d) at 729.

Here, the property owners took immediate action to abate the Bonds' construction, and were successful in stopping the construction in its initial phase by the issuance of a temporary restraining order and temporary injunction. Because the addition has remained unfinished since the issuance of the temporary restraining order and should not be difficult to remove, we think a mandatory injunction requiring the removal of the Bonds' addition is warranted. *Sea Pines Plantation Co.*, 294 S.C. at 275, 363 S.E. (2d) at 896.

Therefore, having reviewed the record in this case and the arguments on appeal, we conclude the trial court erred in denying the property owners' request for an injunction. The judgment is therefore reversed and the case remanded for the issuance of a mandatory injunction requiring removal of the Bonds' structure.

As relates to the Bonds' appeal from the denial of an injunction for the removal of the other property owners' encroachments, we conclude the trial judge correctly ruled that their claim was barred by the doctrine of laches. We dispose of this claim pursuant to Rule 220(b)(2), SCACR; S.C. Code Ann. § 14-8-250 (Supp. 1993); *Voelker v. Hillcock*, 288 S.C. 622, 344 S.E. (2d) 177 (Ct. App. 1986).

For all of the foregoing reasons, the appealed order is

Affirmed in part, reversed in part and remanded.

CONNOR, J., and HOWARD, Acting Judge, concur.