344 S.C. 564 (2001)
544 S.E.2d 854
In the Matter of Doris W. THAMES.
Doris W. Verdery, Individually as an Interested party, and as Attorney-in-fact for Doris W. Thames, Appellant,
v.
Betty Jane Daniels and C. Covert Daniels, Respondents.
No. 3326.
Court of Appeals of South Carolina.
Heard October 12, 2000.
Decided March 26, 2001.
*566 A.F. Carter, III, of Carter Law Firm, of Orangeburg, for appellant.
Steven S. McKenzie, of Coffey, Chandler & Johnson, of Manning, for respondents.
STILWELL, Judge:
Doris W. Verdery brought this action seeking to set aside a power of attorney and a revocation of an earlier power of attorney, both executed by her mother, Doris W. Thames. Verdery alleges that on December 16, 1996, the date both documents were executed, Thames lacked mental capacity. The probate court dismissed Verdery's action, holding Thames was mentally competent when she executed the power of attorney in favor of Betty Jane Daniels and revoked the former power of attorney which appointed Verdery her attorney in fact. The circuit court affirmed. Verdery appeals, and we affirm.

*567 BACKGROUND
Thames, who was in her late eighties at the time of trial, has been married to Harry A. Thames (Mr. Thames) since 1969. Verdery and Daniels are her daughters from a previous marriage, and Daniels' husband, C. Covert Daniels, is her sonin-law.
Thames had been living with her husband, but in the latter part of 1995 she began living at Verdery's home in Orangeburg. During March of 1996, Verdery attempted to have a guardian and a conservator appointed for her mother, apparently on the ground that her mother suffered from dementia and was mentally incompetent. After reviewing the medical evidence, the probate court declined Verdery's request, concluding Thames was mentally competent.
In May of 1996, Thames, while still living with Verdery, executed a durable power of attorney in Verdery's favor. In the summer of that year, Mr. Thames brought a family court action seeking visitation with or custody of his wife. Under a consent order in that case, Thames remained in Verdery's home, but other family members, including her husband, were granted limited visitation. The order also prohibited family members from discussing or transacting business during these visits. The court later held Mr. Thames in contempt after he, Daniels, and Daniels' son, during a visit with Thames, took her to a bank where she withdrew money and refused to return her to Verdery's home. The family court's order included the following statements regarding Thames' competency:
The Defendant, Doris 0. [sic] Thames, is not competent to manage her affairs. Dr. Vann Beth Shuler expressed her medical opinion that Defendant Thames was not competent. The Court further finds from Defendant Thames' testimony that she is not competent and has very little memory.
...
It appears that Defendant Thames is not competent and constantly gives contradictory statements.
Mr. Thames later brought an action in probate court to have a guardian appointed for Thames, alleging she was an "incapacitated person." The court appointed him guardian, noting that the parties' counsel stipulated that she was incapacitated. In its order, the probate court discussed in detail the difference *568 between a guardian and a conservator. The court did not appoint a conservator.
Less than one month later, Thames executed the documents which are the subject of this lawsuit. In addition to asking that the documents be set aside, Verdery asked the court to recognize her as the attorney in fact for Thames, enjoin Daniels and her husband from interfering with Verdery's management of Thames' business affairs, order Daniels and her husband to make an accounting to Verdery regarding transfers of Thames' real and personal property, and award Verdery attorney's fees and costs.

DISCUSSION
While Verdery raises several grounds for appeal, her arguments essentially boil down to two main issues: (1) what is the applicable standard of review for an appellate court in an action to set aside a power of attorney and a revocation of a power of attorney for lack of mental capacity; and (2) based on the appropriate standard of review, did the circuit court err in affirming the probate court's finding that Thames was competent to execute the challenged documents on December 16, 1996?

I. Standard of Review
Verdery first argues the circuit court erred in concluding this was an action at law and thus applied the wrong standard of review. We agree.
The standard of review applicable to cases originating in the probate court is controlled by whether the underlying cause of action is at law or in equity. Howard v. Mutz, 315 S.C. 356, 361-62, 434 S.E.2d 254, 257-58 (1993) (noting the circuit court may not disturb the probate court's findings of fact on appeal in an action at law unless there is no evidence to support them as compared to an equitable action in which the circuit court may make factual findings according to its own view of the preponderance of evidence). The question of whether an action to set aside a power of attorney and a revocation of a power of attorney on the ground of mental incompetency is at law or in equity has not been previously addressed in South Carolina. Therefore, we must examine a *569 power of attorney, and the capacity required to execute and revoke one, in light of other existing legal authority to determine the nature of Verdery's cause of action.
Both Verdery and Daniels compare the current lawsuit to actions to set aside other legal instruments or transactions on the basis of a lack of mental capacity. Verdery argues that her cause of action is akin to an action to set aside a deed or petition signature on the basis of mental incompetence, which is an action in equity. Vereen v. Bell, 256 S.C. 249, 251-52, 182 S.E.2d 296, 297 (1971) (applying an equitable standard of review on appeal for an action to rescind and cancel a deed for lack of capacity); Ballenger v. City of Inman, 336 S.C. 126, 130, 518 S.E.2d 824, 827 (Ct.App.1999) (applying an equitable standard of review on appeal for an action to set aside the signature on land annexation petition for lack of mental capacity). Likewise, an action to rescind a contract is in equity. Gibbs v. G.K.H., Inc., 311 S.C. 103, 105, 427 S.E.2d 701, 702 (Ct.App.1993).
Daniels, on the other hand, equates the current action to a will contest, which is an action at law. Estate of Cumbee v. Cumbee, 333 S.C. 664, 670, 511 S.E.2d 390, 393 (Ct.App. 1999). This general principle applies even when the ground for setting aside the will is lack of mental capacity. Estate of Weeks v. Drawdy, 329 S.C. 251, 262, 495 S.E.2d 454, 460 (Ct.App.1997) (applying a legal standard of review on appeal in an action to set aside a will on the sole ground of lack of capacity).
A durable power of attorney allows a person, the principal, to designate another as his or her attorney in fact to act on the principal's behalf as provided in the document even if the principal becomes mentally incompetent. S.C.Code Ann. § 62-5-501 (Supp.2000); see also 3 Am.Jur.2d Agency § 23 (1986) ("A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal. The written authorization itself is the power of attorney." (footnotes omitted)).
*570 With a durable power of attorney, a principal creates an agency in another that continues despite the principal's later physical disability or mental incompetency. See § 62-5-501; see also 3 Am.Jur.2d Agency § 28 ("The only requirement is that an instrument creating a durable power contain language showing that the principal intends the agency to remain effective in spite of his later incompetency."). Moreover, in order for the principal to create the agency relationship in the first instance, the principal must have the mental capacity to contract. 3 Am.Jur.2d Agency § 12 ("A person who is not in a mental condition to contract and conduct his business is not in a condition to appoint an agent for that purpose."). Therefore, in order to execute or revoke a valid power of attorney, the principal must possess contractual capacity.
South Carolina has defined contractual capacity as a person's ability to understand, at the time the contract is executed, the nature of the contract and its effect. In re: Nightingale's Estate, 182 S.C. 527, 542, 189 S.E. 890, 896 (1937) ("[A] mere infirmity of mind, if it does not amount to an incapacity to understand, at the time of the execution of a contract, the nature of the act done and the effect thereof, ... does not render a person incapable of executing a valid and binding contract."); see also 53 Am.Jur.2d Mentally Impaired Persons § 156 (1996) ("The test for lack of [contractual] capacity is generally said to be whether an individual lacks sufficient mental capacity to understand in a reasonable manner the nature of the transaction in which he or she is engaging, and to understand its consequences and effect upon his or her rights and interests." (footnotes omitted)).
Other jurisdictions addressing this issue have found contractual capacity is required to execute a power of attorney. Younggren v. Younggren, 556 N.W.2d 228, 232 (Minn.Ct.App. 1996) (holding a person is competent when he signs a power of attorney if he has sufficient mental capacity to understand, to a reasonable degree, the nature and effect of his act); Testa v. Roberts, 44 Ohio App.3d 161, 542 N.E.2d 654, 658 (1988) ("[For a power of attorney,] the test to be used to determine mental capacity is the ability of the principal to understand the nature, scope and the extent of the business she is about to transact.").
*571 Because a person must possess contractual capacity to execute or revoke a valid power of attorney, we believe a cause of action to set aside such a document is more closely akin to an action to set aside a contract, deed, or petition than it is to a will contest. Additionally, the reasoning of courts from other jurisdictions analogizing powers of attorney to contracts lends persuasive influence to this conclusion.[1] Moreover, "[p]ersons of unsound minds, like infants, are under the special protection of the courts of equity with respect to their persons, property, and legal transactions." Shepard v. First Am. Mortgage Co., 289 S.C. 516, 518, 347 S.E.2d 118, 119 (Ct.App.1986). Therefore, we hold that an action to set aside a power of attorney and an instrument revoking a power of attorney on the ground of a lack of mental capacity sounds in equity.
In an equitable action, tried by the judge alone, without a reference, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. Townes Assoc. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976); Greer v. Spartanburg Technical Coll., 338 S.C. 76, 79, 524 S.E.2d 856, 858 (Ct.App. 1999). However, this broad scope of review does not require the appellate court to ignore the findings below when the trial court was in a better position to evaluate the credibility of the witnesses. Greer, 338 S.C. at 79, 524 S.E.2d at 858; see also Dorchester County Dep't of Soc. Servs. v. Miller, 324 S.C. 445, 452, 477 S.E.2d 476, 480 (Ct.App.1996). In addition, the appellant still has the burden of convincing this court the trial judge committed error in his findings. Greer, 338 S.C. at 79, 524 S.E.2d at 858; see also Dorchester County, 324 S.C. at 452, 477 S.E.2d at 480. Even though the circuit court applied an erroneous scope of review, that does not end the inquiry because we are at liberty to find the facts in accordance with our own view of the preponderance of the evidence.

*572 II. Thames' Competency
Although Verdery poses some twenty-two issues on appeal, they all hinge on the question of Thames' mental capacity as of December 16, 1996.
Having carefully reviewed the record, we find ample evidence to support the probate court's finding that Thames possessed the requisite mental capacity to execute the challenged instruments on the date in question. Where a transaction is challenged on the ground of mental incompetency, the individual's competency on the date of that transaction must be determined. Grapner v. Atlantic Land Title Co., 307 S.C. 549, 551, 416 S.E.2d 617, 618 (1992). Furthermore, the party alleging incompetence bears the burden of proving incapacity at the time of the transaction by a preponderance of the evidence. Id. We agree with the circuit court and the probate court that Verdery failed to meet her burden.
At trial, Verdery relied primarily on the probate court's order appointing Thames' husband her guardian as evidence of her lack of mental capacity on the date in question. Verdery's reliance on this order is misplaced. In that action, counsel for the parties stipulated Thames was incapacitated and in need of a guardian. The probate court, however, discussed the difference between a guardianship and a conservatorship, including the respective duties of each.[2] Because the court appointed a guardian for Thames and not a conservator, the court's reference to her as incapacitated can only be seen as an adjudication of her physical condition. We do not view the probate court's order in this action as an adjudication of Thames' mental capacity.
Verdery also points to the family court's October 1996 contempt order as proof that Thames lacked mental capacity to revoke her old power of attorney and issue a new one. Although the family court's order makes several references to *573 Thames as incompetent and unable to manage her affairs, such language was mere dicta since it was irrelevant to the court's decision to hold Thames' husband in contempt. Furthermore, the family court lacks jurisdiction to declare an adult incompetent because the probate court has exclusive jurisdiction over such matters. S.C.Code Ann. § 62-1-302(a)(2) (Supp.2000).
Even if we were to consider these two orders as adjudications of Thames' mental incompetency, they still would not be dispositive in this case. An adjudication of incompetency is merely prima facie evidence of that fact. Grapner, 307 S.C. at 551, 416 S.E.2d at 618. A prior adjudication of an individual's incompetence does not conclusively bind the trial court in another action where the person's competency is directly at issue. Church v. Trotter, 278 S.C. 504, 506, 299 S.E.2d 332, 333 (1983) ("In a contract setting, particularly, this Court has looked specifically to the condition of a party at the time of a transaction.").
In addition to the probate court and family court orders, Verdery offered the testimony of Dr. Vann Beth Meyers Shuler, who examined Thames upon a prior probate judge's request and found her mentally incompetent to make decisions regarding her welfare or finances. Doctor Shuler reported Thames' mental deficiencies were permanent, thus supporting Verdery's claim that Thames lacked capacity to execute the challenged documents. However, Dr. Shuler also testified Thames had been incompetent since the first time she saw her in February 1996. This testimony, if found to be credible, is in direct conflict with the finding of the probate court in March 1996 that Thames was mentally competent and would also invalidate the May 1996 power of attorney in Verdery's favor that Verdery now seeks to enforce. Verdery subpoenaed Thames to testify, but the trial court quashed the subpoena after hearing testimony from Thames' personal physician that the stress of testifying would be hazardous to Thames' physical health.[3]
*574 Finally, Verdery herself testified that her mother lacked mental capacity to revoke the earlier power of attorney and to issue a new one on December 16, 1996. She also testified Daniels knew her mother lacked mental capacity to execute such instruments.
In contrast to Verdery's offer of proof, Daniels and her husband produced five witnesses who testified to Thames' mental capacity in December of 1996. Rebecca Bryant, a certified nursing assistant, and Dorothy Josey, a registered psychiatric nurse, visited Thames in her home in December 1996 to care for and examine her. Bryant testified that around Christmas of 1996, she saw Thames five times a week in visits lasting forty-five minutes to an hour. Bryant recalled Thames' mental state was "good" for her age when she saw her. Josey testified Thames was oriented to person, place, and time during her December 19 and 20, 1996 visits. Likewise, when Josey saw Thames on December 23 and 25, 1996, Thames was "cooperative and talkative" in addition to being oriented to time, place and person. Doctor Lea B. Givens, Thames' personal physician, saw Thames on December 12, 1996, and approximately thirteen other times between September 1993 and August 1997. While Dr. Givens said he had not conducted a detailed mental exam of Thames, he testified that each time he saw her, Thames was pleasant, answered his questions, and was oriented to time and place.
The other two witnesses, Angela Hester and Daniels, were present on December 16, 1996, when Thames revoked her prior power of attorney and executed a new one. Hester, a legal assistant at the law firm where Thames executed the challenged instruments, signed the documents as a witness. She specifically recalled explaining the documents to Thames and, when asked, Thames told Hester she understood. Daniels testified she went with her mother to the attorney's office and Thames "knew exactly what she was doing" when she signed the disputed documents on December 16, 1996.
Thus, under either a legal or equitable standard of review, we find the evidence contained in the record fully supports the probate court's finding that Thames possessed the requisite *575 mental capacity to execute the documents in question on December 16, 1996.
The dispositive issues having been decided, any remaining issues on appeal need not be addressed. Rule 220(b)(2), SCACR.
For the reasons discussed, the order of the circuit court affirming the order of the probate court is
AFFIRMED.
ANDERSON and HOWARD, JJ., concur.
NOTES
[1] See Testa, 542 N.E.2d at 658 (recognizing a power of attorney is derived from the law of contracts); see also Younggren, 556 N.W.2d at 234 (upholding the trial court's determination that the rescission of a power of attorney on grounds of mental incapacity was an equitable cause of action).
[2] The court noted, "A guardian, unlike a conservator, is appointed to protect the person of the incapacitated person. This means ... making provision[s] for the care, comfort and maintenance of the incapacitated person.... A conservator, on the other hand, is named to act for an incapacitated person in dealing with property and business affairs...." See also S.C.Code Ann. §§ 62-5-301 to -313 (1987 & Supp.2000); S.C.Code Ann. §§ 62-5-401 to -435 (1987 & Supp.2000).
[3] Although Verdery challenged the court's decision to quash Thames' subpoena at trial, she has not asserted this as error on appeal. The unappealed decision of the trial court, right or wrong, is the law of the case. Town of Mount Pleasant v. Jones, 335 S.C. 295, 298, 516 S.E.2d 468, 470 (Ct.App.1999).