596 S.E.2d 380

**SEABROOK ISLAND PROPERTY OWNERS ASSOCIATION, Appellant,**

v.

**MARSHLAND TRUST, INC., Orangehill Plantation, LLC and Michael Casa, Respondents.**

**No. 3791.**

Court of Appeals of South Carolina.

Heard Dec. 9, 2003.

Decided May 3, 2004.

656

David B. Wheeler & Edward T. Fenno, of Charleston, for Appellant.

Timothy A. Domin, of Charleston, for Respondents.

CURETON, A.J.:

Seabrook Island Property Owners Association (the "Association") brought this action against Michael Casa and his development companies, Marshland Trust, Inc., and Orangehill Plantation, LLC, (collectively, "Developers"), to prevent construction of a bridge from Seabrook Island to two nearby marsh islands. The circuit court found the Association did not have the right to deny the construction and denied the Association's request for an injunction. The Association appeals. We affirm.

## FACTS

Seabrook Island is a restricted-access resort community in Charleston County, South Carolina. In 1972, the subdivision of Seabrook Island was zoned as a planned unit development ("PUD") for Charleston County, which allowed for multiple zoning uses without the need to obtain separate zoning approval for each use. Seabrook Island formed the Association to enforce the restrictive covenants within the PUD. In 1987, the incorporation of the Town of Seabrook Island shifted control of the area from the county to the Town, and the Town adopted the county's PUD provisions.

Casa owned two lots in Seabrook Island in Area 6 of the PUD. Area 6 was zoned mixed commercial and residential. One of the lots was located in the commercial area and another lot, Lot 5, was located in a primarily residential area known as Marsh Creek. Casa intended to develop patio homes on Lot 5. Marsh Creek is subject to the Association's Covenants.

In 1995, Developers outbid the Association and purchased from the United States Bankruptcy Trustee two islands, Is-

lands A and B, located in the marsh near Seabrook Island. Developers originally sought a permit from the South Carolina Office of Ocean and Coastal Resource Management (OCRM) to build two bridges to access the islands—one 350 foot bridge from Lot 5 to Island B and a 750 foot bridge from Casa's commercial lot to Island A. Developers changed their proposal to using Lot 5 as the jumping off point for a bridge or "driveway" to both islands. A single 290 foot bridge, emanating from Lot 5, would go to Island B, and a 600 foot bridge would emanate from Island B to Island A.[1]

After receiving permit approval from the OCRM for the single bridge proposal, Developers submitted an application to the Association's Architectural Review Board ("ARB") for permission to install a curb cut on Lot 5 for access to Islands A and B. The ARB denied Developers' proposal, believing the islands were located outside the PUD.[2] The ARB informed Developers that it had no authority to approve a curb cut for access to property outside the PUD. The ARB denied Developers' appeal, stating it would continue to deny any plans showing an easement across Lot 5 to access the islands.

The Association then filed suit seeking: (i) a declaratory judgment on its right to regulate use of Lot 5; (ii) a permanent injunction against Developers from using Lot 5 or any other property within the Seabrook Island Development to access Islands A and B; and (iii) an injunction against Developers from using Lot 5 for any other nonresidential purpose. The circuit court found the Association did not have the right to deny Developers' use of Lot 5 as a "jumping off point" for

---

1. Interestingly, Developers informed the Court at oral argument that they had settled a separate dispute with the Town of Seabrook Island. As part of that settlement, Developers agreed to only develop Island B. Island A would remain a natural area. Thus, only one bridge, emanating from Lot 5, would be necessary and there would be less of an imposition on the natural marsh environment. However, because this settlement was not between the two parties in the current appeal and was not a matter in the Record before us, we cannot consider this agreement.

2. The circuit court held the islands were within the PUD. The Association has not appealed this finding, and it is the law of the case. *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997) (holding that an unappealed ruling is the law of the case).

the islands and denied injunctive relief. The judge stated although ARB approval is required for the bridge, Developers should be allowed to use Lot 5; otherwise, access to the islands would be unreasonably restricted. The judge based his decision on favoring Developers' free use of property. The Association appeals.

## STANDARD OF REVIEW

A declaratory judgment action is neither legal nor equitable in nature, but it takes on the tenor of the underlying action. *Gordon v. Colonial Ins. Co. of California*, 342 S.C. 152, 155, 536 S.E.2d 376, 378 (Ct.App.2000). "An action to enforce restrictive covenants by injunction is in equity." *Kneale v. Bonds*, 317 S.C. 262, 265, 452 S.E.2d 840, 841 (Ct.App.1994). On appeal from an action at equity, tried by the judge alone without a reference, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. *In re Thames*, 344 S.C. 564, 571, 544 S.E.2d 854, 857 (Ct.App.2001). "However, this broad scope of review does not require the appellate court to ignore the findings below when the trial court was in a better position to evaluate the credibility of the witnesses." Id.

## LAW/ANALYSIS

### I. RESTRICTIVE COVENANTS

The Association argues the restrictive covenants convey upon it and the ARB the right to deny Developers' plan to construct a bridge to Islands A and B. The Association further argues the circuit court erred in relying upon a zoning ordinance to supersede the authority found in the restrictive covenants. We disagree.

### A.

The language of a restrictive covenant is to be construed according to the plain and ordinary meaning attributed to it at the time of execution. *Taylor v. Lindsey*, 332 S.C. 1, 4, 498 S.E.2d 862, 863 (1998). "[A]s voluntary contracts, restrictive covenants will be enforced unless they are indefinite or contravene public policy." *Houck v. Rivers*, 316

S.C. 414, 416, 450 S.E.2d 106, 108 (Ct.App.1994). Restrictions on the use of property will be strictly construed with all doubts resolved in favor of free use of the property, although the rule of strict construction should not be used to defeat the plain and obvious purpose of the restrictive covenant. *Taylor*, 332 S.C. at 4, 498 S.E.2d at 864. Although an architectural review board has discretion regarding approval of proposed construction, that discretion is "constrained only by reasonableness and good faith." *River Hills Prop. Owners Ass'n v. Amato*, 326 S.C. 255, 259, 487 S.E.2d 179, 181 (1997); *O'Shea v. Lesser*, 308 S.C. 10, 15, 416 S.E.2d 629, 632 (1992).

 The Association first argues: (1) the Covenants apply to Lot 5, the Covenants give the Association broad discretion to reject the bridge proposal, and (2) it is reasonable for the Association to deny construction of the bridge. As explained below, we agree with the circuit court that it is unreasonable for the Association to deny construction of the bridge on Lot 5.

Developers' counsel admitted, and Casa testified at trial, that Lot 5 was subject to the Association's Covenants. Further, the deed to Lot 5 provided that the property was subject to the Covenants. The Covenants grant the Association the right to adopt and enforce regulations pertaining to "planning, construction and design of improvements on property or alterations thereto." Association Covenants § 2. The Covenants give sole discretion to the Board or the ARB to approve or disapprove of plans "based upon any ground, including purely aesthetic conditions." Id. at § 19. The sections of the Covenants pertinent to this appeal provide as follows:

"No building of any kind or description, fence, swimming pool, or other structure, shall be erected, placed, or altered on any Lot in the Seabrook Island Development, until the proposed building plans ... shall have been approved in writing by the ... [Association's] Architectural Review Board...." Association Covenants § 19.

"The design and location of [bridges] on Property which is ... subject to these Covenants, must be approved by the ARB." Id. § 25.

The circuit court held the islands were listed within the County's original PUD, which was adopted by the Town of

Seabrook Island. The court found Lot 5 was subject to the restrictions in the Covenants, but the restrictions conflicted with the mixed commercial/residential use permitted in Area 6. Although the court found that the "driveway"/bridge from Lot 5 to the islands would be a "building ... or other structure" subject to the ARB's approval under Covenant § 19, Developers were nevertheless entitled to use Lot 5 as a driveway to the island. The court found that otherwise, "access to the islands would be unreasonably restricted, and [Developers] would be ... unjustifiably denied the free use of its property."

Reviewing the restrictive covenants and strictly construing them in favor of free use of the property, we find the circuit court did not commit error. The Covenants grant the ARB the right to approve or disapprove building plans, even for purely aesthetic reasons. Lot 5, as admitted by Developers and pursuant to deed, is subject to those restrictions. However, to outright deny building a driveway/bridge from Lot 5 would deny access to the islands. Although the ARB had the power to generally approve or disapprove of specific bridge plans "on any grounds," to outright deny the building of a bridge that would give access to the islands would be an unreasonable exercise of that power. Based on a preponderance of the evidence, the circuit court correctly held that it would not grant the Association a declaratory judgment finding the Association had the authority to deny Developers' request to build a bridge.

## B.

In its next argument, the Association states the circuit court erroneously relied upon a "zoning ordinance" to supersede the effect of the Covenants. The Association, however, essentially argues the court erred in relying upon the permitted uses of the PUD for Area 6. We find the circuit court did not commit error.

The Covenants appear to restrict their residential provisions to residential property. Covenant § 5 provides that "[a]ll property shown in the PUD as residential property which is now or hereafter becomes, by express reference or otherwise, subject to these Covenants, shall be used for residential

purposes only." Covenants § 5 (emphasis added). As previously discussed, Lot 5 is located in a section known as Area 6, and Area 6 is "shown in the PUD" as allowing a mixture of commercial and residential use. As admitted by Developers, Lot 5 is subject to the Covenants by deed.

■ Reviewing the conflict between the restriction in application in the Covenants to properties shown in the PUD as residential and the mixed commercial/residential use allowed in the PUD for Area 6, the circuit court noted as follows:

> I find that while Lot 5 is subject to the foregoing provisions of the [Association] covenants, these provisions, as applied to [Developers], conflict with the permitted use of the property in Area 6. If [sic] find that these provisions should not be interpreted to prohibit [Developers'] use of its property considering the mixed use allowed for other property located in Area 6. I find that when read as a whole the entire [Association] covenants and PUD documents do not give the [Association] the right to deny [Developers] the right to use the property as the "jumping off point" for the two islands.

The Association points to this portion of the circuit court's order as proof that the judge erroneously relied upon the uses allowed for Area 6 instead of relying upon the applicable Covenants. Clearly, the circuit court did not rely on the allowed uses for Area 6; instead, the court merely pointed out the conflict between the restriction in the Covenants to residential uses "as shown in the PUD" and the allowance of commercial uses listed in the PUD for Area 6. Despite the conflict, the circuit court found that nothing granted the Association the right to deny complete access to the islands. To deny complete access to the islands would be an unreasonable exercise of the Association's authority. Resolving this conflict in favor of free use of the property, we find the circuit court did not commit any error. See *S.C. Dep't of Natural Res. v. Town of McClellanville*, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001) ("A restriction on the use of property must be created in express terms or by plain and unmistakable implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property.").

■■■ The Association further asserts the circuit court erred by failing to find that Lot 5 was "set" as a residential property, despite the mixed commercial/residential use allowed in the PUD for Area 6.

Developers submitted plans to build patio homes on Lot 5, in addition to using Lot 5 as the starting point for the "driveway"/bridge to the islands. The area surrounding Lot 5, Marsh Creek, contained purely residential developments. The Association argues this makes it clear that the character of Lot 5 has been set as residential, and the circuit court erred in relying upon the mixed use allowed by the PUD for Area 6 to overcome the restrictions on building bridges as found in the Covenants.

Although the developments surrounding Lot 5 in Marsh Creek have been strictly residential, the circuit court correctly pointed out in its order that "nothing in the governing PUD limits the use of Area 6 and Marsh Creek to residential use only." Thus, nothing in either the Covenants or the PUD indicates that the type of development located on Lot 5 has to be residential. Despite pointing out this conflict, the circuit court relied on the potential restriction of free use of property if the Association were allowed to completely bar construction of a driveway/bridge. Thus, the circuit court did not rely upon the PUD provisions to "override" the Covenants; the court merely found the Association's denial of a driveway unreasonable. Accordingly, there is no merit to the Association's argument.

■■■ We further note that it is unreasonable for the Association to deny construction of the bridge because the bridge is essentially a driveway to a single-family residence, and therefore, clearly a residential use. Developers' proposal states the bridge would be wooden and would be only 14 feet wide and a total of 890 feet long. The bridge would begin on Lot 5, continue 290 feet to Island B, then 600 feet to Island A. A bridge emanating from the commercial lot would be longer and more of an imposition to the natural marsh environment. OCRM did not approve a proposal concerning a bridge emanating from the commercial lot. The only approved plan was a bridge from Lot 5. Considering the proposed size and general appearance of the bridge, it would be unreasonable for

the Association to deny construction of the bridge based on the argument it is commercial.

While Lot 5 is subject to the Association's Covenants, we find the circuit court judge committed no error in finding the Association does not have the right to deny Developers the use of the property as a jumping off point for access to the islands.

## II. DENIAL OF ACCESS

The Association also argues denying construction of the bridge on Lot 5 would not unreasonably restrict access to the islands because Developers can access the islands from Casa's adjacent commercial property on Landfall Way. However, Casa testified using Lot 5 as the jumping off point would lead to a much more efficient and aesthetically pleasing way to build the bridge. Casa stated although he could use his commercial property as a jumping off point, that would require using two separate bridges for a total length of 1100 feet, whereas using Lot 5 allows the project to be consolidated into one bridge that has less impact on the environment. Further, OCRM approved the plan with the bridge coming from Lot 5, not the plan with two bridges.

Because using Lot 5 as the jumping off point allows the most efficient and aesthetically pleasing way to construct the bridge, we find it was proper for the circuit court judge to find Developers would be unreasonably restricted from using Islands A and B if Lot 5 could not be used as a jumping off point.

## III. DENIAL OF INJUNCTIVE RELIEF

The Association argues the circuit court erred in failing to grant its request for injunctive relief to enforce its valid restrictive covenants. We disagree.

"The remedy of injunction is a drastic one and should be cautiously applied only when legal rights are unlawfully invaded or legal duties are willfully or wantonly neglected." *LeFurgy v. Long Cove Club Owners' Ass'n, Inc.*, 313 S.C. 555, 558, 443 S.E.2d 577, 578 (Ct.App.1994). "The issuance of an injunction depends upon the equities between the parties and if great injury will be done to the [party sought to be enjoined] with little benefit to the other property owners, it

is proper for the trial court to deny equitable relief." *Kneale,* 317 S.C. at 268, 452 S.E.2d at 843.

■ Reviewing the evidence before this Court, we find the circuit court correctly denied the Association's request for an injunction. The Association sought to deny the construction of *any* bridge to the islands, thus denying complete access. The circuit court held there was no likelihood of irreparable harm to the Association if the injunction were denied and great harm, in the form of denial of the free use of property, to Developers if the injunction were granted. Although the Covenants give the Association the right to approve or disapprove of plans, including bridges, these restrictions must be strictly construed in favor of the free use of property. *Taylor,* 332 S.C. at 4, 498 S.E.2d at 864. Because an injunction on the building of a bridge to the islands would greatly harm Developers' ability to access the property, we find the circuit court correctly denied the injunction.

## CONCLUSION

In order to allow Developers free use of Islands A and B, some form of access to the islands is required. We find using Lot 5 as a jumping off point is both a residential use of property and the most efficient and aesthetically pleasing way to construct the bridge. Based on the above, the decision of the circuit court is

**AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.