**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Bonnie Wall, individually and derivatively, and Walter B. Wall, Jr, Appellants,

v.

Jonathan Dye, Shaun Dye, Shellmore Homeowners' Association, Inc., and John H. Chakides, Jr., invididually and in his capacity as Director of Shellmore Homeowners' Association, Inc., Respondents.

Appellate Case No. 2020-001583

———————

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

———————

Unpublished Opinion No. 2024-UP-159
Heard February 8, 2024 – Filed May 8, 2024

———————

**AFFIRMED**

———————

Ainsley Fisher Tillman and Ian S. Ford, both of Ford Wallace Thomson, LLC, of Charleston, for Appellants.

Lawrence Sidney Connor, IV, of Kelaher Connell & Connor, PC, of Surfside Beach, for Respondents Shellmore Homeowners' Association, Inc. and John H. Chakides, Jr.

Andrew Marvin Connor, of Connor Law, PC, of Mount Pleasant, for Respondents Jonathan Dye and Shaun Dye.

---

**PER CURIAM:**  In this civil matter, Bonnie Wall and Walter B. Wall, Jr. (collectively, the Walls) appeal the master-in-equity's order granting Jonathan Dye and Shaun Dye (collectively, the Dyes), John H. Chakides, Jr., and Shellmore Homeowners' Association, Inc. (the Association) (collectively, Respondents) summary judgment on the Walls' claims for breach of fiduciary duty and civil conspiracy.[1]  We affirm.

1. Pursuant to the recent analysis in *Walbeck v. I'On Company, LLC*, 439 S.C. 568, 889 S.E.2d 537 (2023), and prior precedent, we find the master did not err in granting Respondents summary judgment on the Walls' breach of fiduciary duty claim.  *See id.* at 585, 889 S.E.2d at 546 ("*Developers* owe fiduciary duties to homeowners and homeowners' associations regarding common areas." (emphasis added) (footnote omitted)); *id.* at 585 n.11, 889 S.E.2d at 546 n.11 ("Generally, when a Developer turns over control of the HOA to its members by *relinquishing its superior voting power, the fiduciary relationship is extinguished*; the developer no longer has control over that which an HOA has an interest." (emphasis added)); *id.* ("[T]h[e]se duties stem from developer control of the entity, the ongoing nature of construction, and the transfer of common areas.").  Unlike a developer who maintains superior voting power and control over the subdivision until construction is complete and the majority of properties are sold, which creates the fiduciary relationship, the Association does not hold such power.  Therefore, the appropriate measure for evaluating an Association's performance is whether the directors of the Association have exercised reasonable judgment and acted in good faith.  *See O'Shea v. Lesser*, 308 S.C. 10, 15, 416 S.E.2d 629, 631–32 (1992) (holding an architectural review board designated by a homeowners' association did not owe

---

[1] *See Loflin v. BMP Dev., LP*, 427 S.C. 580, 588, 832 S.E.2d 294, 298–99 (Ct. App. 2019) (providing that appellate courts review a grant of summary judgment under the same standard applied by the circuit court under Rule 56(c), SCRCP), *aff'd as modified on other grounds*, 432 S.C. 246, 851 S.E.2d 713 (2020); *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 299 (2023) ("Rule 56(c) of the South Carolina Rules of Civil Procedure provides that the moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (alteration in original) (quoting Rule 56, SCRCP)).

homeowners a fiduciary duty; rather, the review board owed "a duty to exercise judgment reasonably and in good faith"); *id.* at 15, 416 S.E.2d at 632 ("We have never imposed the high standard of fiduciary duty on planned community organizations, such as the [b]oard, which are vested with the discretion to ensure that proposed modifications to residential property enhance the entire community."); *Fisher v. Shipyard Vill. Council of Co-Owners, Inc.*, 409 S.C. 164, 177 n.2, 760 S.E.2d 121, 128 n.2 (Ct. App. 2014) (relying on *O'Shea* in holding the circuit court erred in granting summary judgment to homeowners against homeowners association for breach of fiduciary duty), *aff'd as modified*, 415 S.C. 256, 781 S.E.2d 903 (2016) (*Fisher II*); *id.* ("To the extent the circuit court did grant summary judgment on the issue of fiduciary duty, it is reversed."). Although the Walls attempt to distinguish the instant case from *O'Shea* by asserting the Association is a nonprofit corporation whereas the review board in *O'Shea* was unincorporated, we find no indication in our precedent that such a distinction matters.[2]

Furthermore, even if the Association did owe homeowners a fiduciary duty, the record fails to show the Board of Directors of the Association (the Board) acted unreasonably or in bad faith such that the business judgment rule would not apply. *See FisherII*, 415 S.C. at 270, 781 S.E.2d at 910 ("In South Carolina, courts apply the business judgment rule to protect corporate directors."); *id.* at 270–71, 781 S.E.2d at 910 ("The business judgment rule applies to disputes between directors of a homeowners' association and aggrieved homeowners, and as the court of appeals has stated, 'the conduct of the directors should be judged by the "business judgment rule" and absent a showing of bad faith, dishonesty, or incompetence, the judgment of the directors will not be set aside by judicial action.'" (quoting *Goddard v. Fairways Dev. Gen. P'ship*, 310 S.C. 408, 414, 426 S.E.2d 828, 832 (Ct. App. 1993))). The applicable covenants within "Declaration of Covenants, Conditions, and Restrictions on Cape Romain Lookout Subdivision, Being a Part of 'Kensington Plantation'" (the Declaration) are unambiguous, and the record shows Respondents complied with the established requirements.[3] *See Fisher*, 409

---

[2] The Association is a nonprofit corporation organized pursuant to the South Carolina Nonprofit Corporation Act and was formerly known as the Cape Romain Lookout Homeowners Association, Inc.

[3] The Declaration specifically addresses the construction of docks, stating, "No boat houses, docks, piers, or wharves shall be constructed on any lot without first obtaining the written approval of the Association, or its designated representative." The Association's bylaws require the Board to appoint an architectural review committee (ARC). Before pursuing construction of their covered dock, the Dyes

S.C. at 180, 760 S.E.2d at 130 ("A homeowners association is bound to follow its covenants and bylaws . . . ."); *Cedar Cove Homeowners Ass'n, Inc. v. DiPietro*, 368 S.C. 254, 260, 628 S.E.2d 284, 287 (Ct. App. 2006) (providing that appellate courts "adhere to the unambiguous terms of the restrictive covenants"); *Seabrook Island Prop. Owners Ass'n v. Marshland Tr., Inc.*, 358 S.C. 655, 662, 596 S.E.2d 380, 383 (Ct. App. 2004) ("Restrictions on the use of property will be strictly construed with all doubts resolved in favor of free use of the property, although the rule of strict construction should not be used to defeat the plain and obvious purpose of the restrictive covenant."). Although the Walls contend the Board breached its duty by "self-dealing" because Chakides had a separate application for a covered dock on his own property, we find this argument lacks merit. Chakides was only one member of the Board, which unanimously approved the plans for the Dyes' covered dock. Moreover, the approval given to the Dyes applies only to their property based upon the specific circumstances and specifications of their plans; nothing in the record suggests that because the Dyes received approval, Chakides's plans will also receive approval. Also of note, Mr. Wall nominated one of the members to the ARC and that member voted in favor of the covered dock. Thus, the record lacks evidence supporting the Walls' allegations of the Board acting in bad faith, and the business judgment rule applies.[4]

2. We find the master did not err in granting summary judgment to Respondents on the Walls' civil conspiracy claim. "Civil conspiracy has long given rise to uncertainty as to its elements and proper application." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 565, 861 S.E.2d 774, 775 (2021). "In 1981, . . . , the Court issued the *Todd* decision, which has been interpreted as creating a new element for civil conspiracy claims in South Carolina—a requirement that a plaintiff plead special damages." *Id.* at 568, 861 S.E.2d at 777; *see Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 278 S.E.2d 607 (1981), *overruled by Paradis*, 433 S.C. 562, 861 S.E.2d 774. "This test resulted in the dismissal of civil conspiracy actions that did not expressly plead special damages on the basis they failed to adequately allege a cause of action." *Paradis*, 433 S.C. at 572, 861 S.E.2d

---

sought federal and state permits and received both. They also submitted their original plans and revised plans to the ARC, and the ARC and subsequently the Board approved both sets of plans.

[4] To the extent the Walls contend Respondents circumvented the covenants of the Declaration because of a vote in 2016, this argument lacks merit. Although the Association voted at the 2016 annual meeting to prohibit the construction of covered docks, the record does not contain any evidence showing the Declaration was ever effectively amended to incorporate the decision of this vote.

at 779.  "South Carolina courts held that, because special damages are a required element of a civil conspiracy claim, a plaintiff must plead special damages that go beyond the damages alleged in other claims to state a cause of action."  *Id.*  Although the Walls correctly contend that a claim for civil conspiracy no longer requires a showing of special damages, their claim does not receive the benefit of the change in law as their appeal was already pending at the time *Paradis* was published.  *See id.* at 574, 861 S.E.2d at 780 ("In light of our decision today, we are returning to our long-standing precedent pre-*Todd* and for clarification specifically state a plaintiff asserting a civil conspiracy claim must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff."); *id.* at 577, 861 S.E.2d at 781 (providing that "cases on appeal that have already been tried under the *Todd* framework shall be decided using the *Todd* analysis").  Therefore, the prior rule established by *Todd* applies.  *See Lee v. Chesterfield Gen. Hosp., Inc.*, 289 S.C. 6, 10, 344 S.E.2d 379, 382 (Ct. App. 1986) ("A civil conspiracy, on the other hand, consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage."), *overruled by Paradis*, 433 S.C. 562, 861 S.E.2d 774; *Paradis*, 433 S.C. at 573, 861 S.E.2d at 779 (explaining a plaintiff asserting a civil conspiracy claim under *Todd* must allege acts in furtherance of the conspiracy *separate and distinct from* the acts supporting other causes of action).  In their complaint, the Walls alleged Respondents conspired to circumvent the covenants contained within the Declaration to serve their personal interests of constructing covered docks and boatlifts on their own properties.  The Walls assert Respondents' actions in breaching the covenants and their fiduciary duties, which form the basis for the Walls' other claims, caused them special damages.  Based on the foregoing, the master did not err in finding the Walls failed to sufficiently show damages, and summary judgment was proper.

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS and HEWITT, JJ., concur.**