644 S.E.2d 778

**ARCADIAN SHORES SINGLE FAMILY HOMEOWNERS ASSOCIATION, INC., Appellant,**

v.

**Miriam R. CROMER, Respondent.**

**No. 4223.**

Court of Appeals of South Carolina.

Submitted March 1, 2007.

Decided March 26, 2007.

Withdrawn, Substituted and Refiled May 17, 2007.

Rehearing Denied May 17, 2007.

---

C. Scott Masel, of Myrtle Beach, for Appellant.

Robin S. Cromer, of Anderson, for Respondent.

SHORT, J.:

Arcadian Shores Single Family Homeowners' Association, Inc., (the Association) appeals the master's refusal to issue a permanent injunction requiring Miriam R. Cromer to comply with certain restrictive covenants. The Association contends the master erred in (1) refusing to find Cromer had actual or

constructive knowledge of the 1985 Regulations; (2) failing to hold Cromer's motor home violated the intent and purpose of the 1965 Declaration; (3) finding Cromer's motor home did not violate the plain language of the 1985 Regulations; (4) holding the Association abandoned its right to enforce the restrictive covenants; (5) denying its claim for injunctive relief; and (6) awarding Cromer the costs of complying with a temporary injunction. We affirm.[1]

## FACTS

On March 11, 1965, Ocean Lakes Investment Company (Developer) adopted and recorded a declaration of restrictions (the 1965 Declaration) applying to lots 5 through 97 of the Arcadian Shores Subdivision (the Subdivision). The 1965 Declaration provides, in pertinent part:

4. ... No building, outbuilding, addition, or fencing shall be constructed without first submitting plans and specifications to and obtaining the written approval of the plans by the Developer, which approval will not be unreasonably withheld.

. . . .

7. ... Lot owners will comply with such reasonable regulations as the Developer may make as to the location of fixtures or appliances ... and as to parking or storage of commercial vehicles, boats or machinery on the premises.

8. Except as incidental and necessary to permanent building construction ... no mobile home, temporary structure or garage apartment shall be erected upon the lot.

On June 14, 1982, the Developer's trustee executed and recorded a corrective quit-claim deed in favor of the Association, purporting to convey all of its rights in the Subdivision, particularly the following:

All of the [Developer's] rights under recorded restrictions applicable to [the Subdivision] to enforce any and all such restrictions ... to approve or disapprove plans and specifi-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

cations ... to make regulations permitted by the Subdivision restrictions and to enforce same.... [2]

On January 15, 1985, the Association attempted to enact a set of regulations applicable to the Subdivision (the 1985 Regulations).[3] The 1985 Regulations specify, in detail, the applicable fencing limits and plainly prohibit motor homes and travel trailers from being parked where they are visible from the street. The 1985 Regulations were also recorded.

On March 24, 2000, the homeowners in the Subdivision elected to create a Special Tax District. Although the Association assigned and delegated many of its rights and duties to the Special Tax District, it retained all of its rights to enforce recorded restrictions, approve or disapprove plans and specifications, and make regulations.

On July 2, 2003, Cromer obtained title to Lot 96 in the Subdivision. After she purchased Lot 96, she sought to park a motor home on the property.[4] In addition, she submitted plans and specifications to the Association in order to get approval for a fence and other building modifications on the property. The plans called for a three foot high masonry lattice wall in the front yard of Lot 96. The Association approved these plans. However, Cromer built a three foot high solid stucco wall instead.

On January 23, 2004, the Association filed a complaint against Cromer, seeking to enjoin her from parking her motor home in a place where it would be visible from the street and to require Cromer to remove her fence. Cromer answered,

2. This recorded deed corrected a prior quit claim deed which did not include the specific rights enumerated.

3. Fifteen days later, the Association adopted a second declaration which neither party uses to justify relief on appeal. The Association refers to this second declaration as "1985 restrictions" and the first declaration as the "1985 regulations." The master referred to these declarations collectively as the "1985 documents." Both parties agree the 1985 restrictions are invalid.

4. A trailer attached to Cromer's motor home made the total length equal seventy feet. Although the Association refers on appeal to Cromer's seventy foot motor home, they do not appeal the master's finding that Cromer was allowed to park the trailer on her property. Therefore, we address only the issue of parking the motor home on the property.

denying her motor home or fence violated the applicable restrictive covenants. The Association sought and obtained a temporary injunction requiring Cromer to comply with the 1985 Regulations with respect to her motor home. As a precondition to issuing this injunction, the circuit court required the Association submit a $10,000 surety bond to reimburse Cromer should the injunction later be overruled.

After an order of reference, the master held a hearing and ultimately denied the Association's requests regarding both the motor home and the fence. Of consequence to the present appeal, the master made the following findings and conclusions: (1) the 1985 Regulations were not valid because they were not properly signed, acknowledged, or indexed; (2) the 1965 Declaration does not prohibit Cromer's motor home; (3) the Association abandoned its right to approve of fencing; and (4) Cromer should receive $9,000 of the surety bond for reimbursement of expenses associated with the temporary injunction. This appeal followed.

## STANDARD OF REVIEW

"An action to enforce restrictive covenants by injunction is in equity." *Seabrook Is. Prop. Owners Ass'n v. Marshland Trust, Inc.*, 358 S.C. 655, 661, 596 S.E.2d 380, 383 (Ct.App.2004). In equitable actions, the appellate court may make findings of fact in accordance with its own view of the preponderance of the evidence. *Grosshuesch v. Cramer*, 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005). However, the appellate court is not required to ignore the findings of the master when the master was in a better position to evaluate the credibility of the witnesses. *Siau v. Kassel*, 369 S.C. 631, 638, 632 S.E.2d 888, 892 (Ct.App.2006).

## LAW/ANALYSIS

### I. The Motor Home

The Association contends the master erred in refusing to order Cromer to comply with the 1985 Regulations regarding the parking of her motor home. Specifically, the Association argues (1) Cromer had actual or constructive notice of the 1985 Regulations; (2) the 1985 Regulations prohibit the park-

ing of Cromer's motor home in an area visible from the street; (3) alternatively, the motor home violated the intent and purpose of the 1965 Declaration; (4) the Association did not waive its right to enforce the motor home restrictions; and (5) as a consequence of the above, the master erred in refusing to issue the injunction and finding Cromer entitled to $9,000 of the surety bond.

## A. The Law of the Case

■ We are in agreement with the master's finding that the Association's argument contending that "a portion of the 1985 documents are 'regulations,' not restrictions, which the Association made pursuant to the developer's authority in the 1965 restrictions" is not a valid argument. We concur in the master's finding that any "regulation" mentioning "motor homes (RV's), campers, or travel trailers" necessarily constitutes a change to the original 1965 restrictions and that such a change would require a document signed and acknowledged by the majority of lot owners. Further, we recognize the master ruled the 1985 Regulations were invalid because they were improperly signed, acknowledged, and indexed. While the Association appealed the issue of whether it properly indexed the 1985 Regulations, nothing in the Association's appellate brief addresses whether the master erred in finding the 1985 Regulations were not validly signed or acknowledged. Because the Association did not appeal this ruling, it is the law of the case. See ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche, 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997) (recognizing an unappealed finding of the master, right or wrong, is the law of the case and should not be considered by this court).

In addition, based on this conclusion, we need not address the issue of whether Cromer had actual or constructive notice of the 1985 Regulations, whether the 1985 Regulations prohibited the parking of the motor home, or whether the Association waived its right to enforce the motor home restriction. See Anderson v. Short, 323 S.C. 522, 525, 476 S.E.2d 475, 477 (1996) (holding when a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case). Accordingly, we proceed to consid-

er whether the 1965 Declaration, standing alone, precludes the parking of Cromer's motor home in an area visible from the street.

## B. The 1965 Restrictions

The Association claims the 1965 Restrictions prohibit the parking of Cromer's motor home in an area visible from the street. We disagree.

"Restrictive covenants are contractual in nature." *Hardy v. Aiken,* 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006). The language in a restrictive covenant shall be construed according to the plain and ordinary meaning attributed to it at the time of execution. *Seabrook,* 358 S.C. at 661, 596 S.E.2d at 383. "A restriction on the use of property must be created in express terms or by plain and unmistakable implication and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of the property." *Hamilton v. CCM, Inc.,* 274 S.C. 152, 157, 263 S.E.2d 378, 380 (1980) (citations omitted). The court may not limit a restriction, nor will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms, even to accomplish what it may be thought the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written. *Taylor v. Lindsey,* 332 S.C. 1, 4, 498 S.E.2d 862, 864 (1998) (citations and quotations omitted).

The Association points to the following provisions of the 1965 Declaration in arguing it prohibits the parking of motor homes in an area visible from the street:

7. ... Lot owners will comply with such reasonable regulations as the Developer may make as to the location of fixtures or appliances ... and as to parking or storage of commercial vehicles, boats or machinery on the premises.
8. Except as incidental and necessary to permanent building construction ... no mobile home, temporary structure or garage apartment shall be erected upon the lot.

The first provision gives the Developer the power to enact regulations with respect to the parking or storage of commercial vehicles, boats, or machinery. Assuming Cromer's motor home is a commercial vehicle or machinery, this provision does

not contain any affirmative prohibition or limitation on its parking or storage.

With respect to the second provision, the Association contends motor homes were largely unknown at the date of execution of the 1965 Declaration and the prohibition on erecting a mobile home shows an intent or purpose to regulate the parking of a motor home. While the Supreme Court of South Carolina initially agreed with this contention in *Nance v. Waldrop*, 258 S.C. 69, 187 S.E.2d 226 (1972), it subsequently rejected that line of thinking in *Taylor*, which overruled *Nance*.

In *Nance*, restrictions adopted in 1938 provided, in pertinent part: "No house shall be erected thereon [on any lot] costing less than Four Thousand Five Hundred ($4,500.00) Dollars." 258 S.C. at 71, 187 S.E.2d at 227. A subsequent purchaser placed his mobile home on the lot, and his neighbors sought an injunction enforcing the covenant. *Id.* at 71–72, 187 S.E.2d at 227. The master and circuit court held the mobile home violated the restriction and issued an injunction. *Id.* at 72, 187 S.E.2d at 227.

On appeal, the Supreme Court noted the mobile home had been "virtually unknown" at the time the covenant was adopted. *Id.* at 72, 187 S.E.2d at 228. The Court ultimately concluded "[t]he circumstances surrounding the inception of the restrictions and the developments subsequent thereto enforce the argument that the restrictions as drawn were designed and intended to prevent uses such as the defendant is making of his lot." *Id.* at 74–75, 187 S.E.2d at 229.

In *Taylor*, a restrictive covenant provided, in relevant part: "No residence to cost less than $10,000.00 shall be erected on said lots...." 332 S.C. at 3, 498 S.E.2d at 863. To prevent defendant from placing mobile homes on his lots, his neighbors sought an injunction pursuant to this covenant. *Id.* This court reversed the master's refusal to grant the injunction, and the Supreme Court granted *certiorari*. *Id.* The Supreme Court questioned "how the parties in *Nance* could have intended to prohibit mobile homes which were non-existent when the restrictive covenant was drafted" and thereby overruled *Nance*. *Id.* at 4, 498 S.E.2d at 864. In addition, the Court explained: "Here, the restrictive covenant was written

in the 1960s when mobile homes were prevalent. Therefore, if the grantor had wanted to restrict mobile homes, he could have done so." *Id.* at 5, 498 S.E.2d at 864.

Applying *Taylor*, we hold the Developer did not intend to prohibit the parking of a motor home when it adopted the 1965 Declaration. Moreover, because the 1985 Regulations are not valid, no provision prohibits Cromer from parking her motor home on her property. Therefore, we hold the master did not err in refusing to grant the Association's injunction. Because of this conclusion, we also affirm the master's decision with respect to the surety bond.

## II. The Fencing

The Association maintains the master erred in refusing to order Cromer to tear down her fence. In particular, the Association asserts (1) Cromer had actual or constructive notice of the Association's right to approve of fencing; (2) the Association did not waive this right; and (3) as a consequence, the master erred in failing to grant the injunction. We find it necessary only to address the issue of whether the Association waived its right to approve of Cromer's fence.

### A. Waiver

The Association contends the master erred in holding it waived its right to approve of fencing. We disagree.

Initially, we reiterate our holding that the master found the 1985 Regulations were invalid and this ruling is the law of the case. As a result, we consider only the 1965 Declaration in determining whether the Association waived its right. The 1965 Declaration provides, in relevant part:

No building, outbuilding, addition, or fencing shall be constructed without first submitting plans and specifications to and obtaining the written approval of the plans by the Developer, which approval will not be unreasonably withheld.

Waiver has been defined as the intentional relinquishment of a known right. *Gibbs v. Kimbrell*, 311 S.C. 261, 267, 428 S.E.2d 725, 729 (Ct.App.1993). "Neither the restricting of every lot within the area covered, nor absolute identity of restrictions upon different lots is essential to the existence of a

neighborhood scheme." *Pitts v. Brown*, 215 S.C. 122, 130, 54 S.E.2d 538, 542 (1949). However, extensive omissions or variations tend to show that no scheme exists, and that the restrictions are only personal contracts. *Id.*

In this case, testimony revealed some people did not submit plans or specifications for certain projects to the Association and that the Association inconsistently enforced this requirement. Moreover, pictures of property throughout the neighborhood show the absence of any scheme with respect to fencing or other structures. In fact, the Association's current president testified the Association's board was "fine with the fence," and that Cromer's husband "could have submitted a variance and it could've been approved by the board if he would've been hospitable, but he took it on himself to do whatever." Additionally, we defer to the master's ability to observe the witnesses and emphasize that the master visited the Subdivision and was in the best position to determine the existence, if any, of a neighborhood scheme. Accordingly, we hold a preponderance of the evidence supports the master's conclusion that the Association waived its right to approve of plans and specifications with respect to Cromer's fence.

## CONCLUSION

We hold the master's ruling that the 1985 Regulations are invalid is the law of the case. In addition, we find the 1965 Declaration does not prohibit the parking of Cromer's motor home on her property. Consequently, we need not address the Association's other contentions with respect to the motor home and affirm the master's decision with respect to the surety bond.

Regarding Cromer's fence, we hold a preponderance of the evidence supports the master's conclusion that the Association waived its right to require approval. As a result, we find the master did not abuse his discretion in denying the Association's request for injunctive relief. Based on the foregoing, the master's decision is

**AFFIRMED.**

ANDERSON and KITTREDGE, JJ., concur.